No. 82-30

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

IN RE THE MARRIAGE OF

SHARON M. GARST,

Petitioner and Appellant,

-vs-

ORAH W. GARST,

Respondent and Respondent.

Appeal from: District Court of the Sixteenth Judicial District,
In and for the County of Powder River, The Honor-
able Alfred B. Coate, Judge presiding.

Counsel of Record:

For Appellant:

Lucas & Monaghan; Lance Tonn, Miles City,
Montana

For Respondent:

Berger, Sinclair & Nelson; James Sinclair,
Billings, Montana

Submitted on Briefs: June 17, 1982

Decided: August 11, 1982

Filed: AUG 11 1982

Thomas J. Kearney
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Sharon M. Garst appeals from a judgment apportioning marital property and from a denial of her post-trial motions in the District Court of the Sixteenth Judicial District in Powder River County.

Sharon and Orah (the latter also known as Dub) were married at Hot Springs, Arkansas, on February 22, 1972. They have two children: Jason, born on April 21, 1973, and Shayna, born on June 10, 1976.

Prior to their marriage, Sharon had worked as a secretary, and Dub had worked as a jockey, traveling to racetracks around the country. For the first three years of their marriage, Sharon and Dub traveled extensively, allowing Dub to continue working as a jockey. In 1975, Sharon and Dub moved to a ranch owned by Dub's parents in Powder River County, Montana. Dub worked as a ranch hand until September 1977. At that time, Sharon and Dub bought the ranch from Dub's parents for $243,750. This purchase included a conveyance of one-half of the underlying minerals owned by Dub's parents. Sharon and Dub later conveyed one-half of their mineral interest to Dub's brother.

Sharon and Dub lived and worked together on the ranch until July 1, 1980, when Sharon filed a petition for dissolution of marriage. Thereafter, Sharon and the couple's two children moved to Broadus, where Sharon became employed as a secretary. At this time, Dub gave Sharon $14,000 to buy a mobile home. Dub continued to work and live at the ranch, and supplemented his ranch income by working occasionally as a jockey and as a musician.

On July 17, 1981, trial was held. Sharon called two witnesses who had made appraisals of the ranch machinery and

-2-

ranch land. Bob Barthel, a farm machinery dealer, submitted an appraisal showing the total value of the machinery to be $68,025. Dennis Jurica, an appraiser and realtor from Miles City, testified that the ranch land was worth $500,000.

Dub, on the other hand, testified that the value of the machinery was $37,850, and the value of the ranch was between $325,000 and $386,000.

On September 10, 1981, the District Court entered its findings of fact and conclusions of law. Among other things, the District Court found that the value of the machinery was $74,025, and the value of the ranch land was $356,874.37. The District Court determined the marital net equity of the parties to be $56,744.32. This compared to Sharon's proposed finding of net equity to be $236,092.57 and Dub's submitted net equity figure of $93,095.

The District Court divided the marital property as follows:

SHARON GARST

1.  The mobile home with Dub to assume the obligation thereon.

2.  Twenty percent of the remaining livestock.

3.  Fifty percent of the oil, gas, and mineral interest.

4.  All of her personal property, including the automobile now in her possession.

DUB GARST

1.  The land, machinery, balance of the livestock, balance of the oil, gas, and minerals, and the personal property in his possession.

2.  All liabilities incurred during the marriage.

The basic issue boils down to this: Did the District Court abuse its discretion by failing to determine accurately the net worth of the marital estate?

The discretion of the District Court is given primarily by the criteria set forth in section 40-4-202(1), MCA, which states in part:

-3-

"In a proceeding for dissolution of marriage
. . . the court . . . shall . . . finally
equitably apportion between the parties the
property and assets belonging to either or
both, however and whenever acquired and
whether the title thereto is in the name of
the husband or wife or both . . ."

In reviewing divisions of marital property, this Court must determine only whether the District Court, in exercise of its discretion, acted arbitrarily, unreasonably, or without regard to recognized principles resulting in substantial injustice. In Re Marriage of Kis (1982), ___ Mont. ___, 639 P.2d 1151, 1154, 39 St.Rep. 119, 125. Only when the findings of a District Court are clearly erroneous will they be set aside. Rule 52(a), M.R.Civ.P.

Sharon's primary complaint is that the District Court deviated from the evidence submitted by either party and valued assets significantly lower than the testimony justified. We agree with Sharon in some respects.

For example, both parties' value of the land was higher than that determined by the District Court. In its findings of fact, the District Court indicated it arrived at the value of the land by increasing by ten percent per annum the purchase price of $243,750. This formula would raise the value of the land to $356,874.37. In another finding of fact, the District Court used extraneous factors such as "current production costs, drought, and prices for agricultural products," and "the current concern for unit train loadings from grain terminals" to justify its finding as to the value of the land. None of these extraneous factors were ever mentioned in the testimony or exhibits presented by either party.

This Court stated in In Re Marriage of LeProwse (1982), _____ Mont. _____, 646 P.2d 526, 529, 39 St.Rep. 1053, 1057, "No

-4-

abuse of discretion can be found in findings of fact and conclusions of law that: carefully set forth the fair market value, outstanding obligations, and net value of each marital asset; develop the trier of fact's reasoning for accepting respondent's appraisals and estimates over those offered by appellant; and are fully supported by the record." (Emphasis added.) The District Court failed this test by using factors not supported in the record to determine the value of the land.

Sharon next contends that the District Court erred when it did not include in the marital estate the sum of $74,875, which represents the appraised value of the residence, outbuildings, corrals, and other structures located upon Dub and Sharon's ranch. We do not agree with this contention. Testimony of both Sharon's appraiser and Dub indicated that the buildings were considered when reaching the appraisal values. In this case, it was clearly within the court's discretion to consider the buildings along with the land in determining the value of the ranch.

Sharon also contends that the District Court erred in its valuation of the ranch machinery. Again, we cannot agree with this contention, since the record supports the District Court's finding. Bob Barthel's appraisal of the machinery listed the total value to be $68,025. However, Barthel's appraisal did not include a pickup truck, which Dub admitted under cross-examination was worth $6,000. The District Court added to Barthel's appraisal the value of the truck, and determined the value of the machinery to be $74,025. Such a finding was clearly supported by the record and will not be disturbed by this Court.

Finally, Sharon disagrees with the manner in which the District Court calculated the marital indebtedness. The

District Court entered the following findings of fact
regarding the marital liabilities:

"The parties have incurred the following
liabilities:

| | |
|---|---:|
| "Stockman's Bank | $23,969.68 |
| Accrued Interest | 1,120.78 |
| | |
| "Federal Land Bank | $133,103.30 |
| Accrued Interest | 15,306.00 |
| | |
| "Federal Land Bank | $21,325.25 |
| Accrued Interest | 2,452.27 |
| | |
| "Commodity Credit | $6,461.00 |
| Accrued Interest | 484.57 |
| | |
| "Department of Interior | $20,000.00 |
| No Interest | |
| | |
| "Russell Garst | $166,236.00 |
| Accrued Interest | 6,901.20 |
| | |
| "Mobile Home Obligation | $19,770.00 |
| | $417,130.05 |

The evidence shows that Dub was allowed to introduce as
an exhibit an affidavit outlining the parties' assets and
liabilities.  This exhibit fully supports the District
Court's finding concerning the marital liabilities.  There-
fore, substantial evidence exists in the record to support
the District Court's finding.

The magnitude of the District Court's failure to determine
accurately the net worth of the marital estate can be shown
by examining the net worth figures placed in evidence by the
parties.  Sharon's evidence indicated that the net marital
equity totalled $236,092.57, and Dub's evidence indicated a
net marital equity of $93,095. However, the District Court
found that the marital net equity was $56,744.32.  The
court's figure is considerably less than the figures submitted
by either of the parties.  The court's marital equity finding
is clearly erroneous and is not supported by the record.

The District Court, therefore, abused its discretion in arriving at the marital net worth.

The difference in net marital worth from the figure testified to by the husband and that found by the District Court is $36,350.68. The distribution to Sharon should be at least $18,000 more than awarded here, assuming the District Court was attempting to divide the marital estate equally.

As a final matter, Sharon requests that Dub be required to account for the income he received from oil and gas leases during the period between the parties' separation and the entering of the decree by the District Court. Although the District Court did divide the record ownership of the mineral interests equally between Sharon and Dub, Sharon did not receive any of the income therefrom until after the decree was entered. We hold that Sharon is entitled to her share of the income during the pendency of the divorce.

The District Court's judgment is affirmed in part and reversed in part, in accordance with this opinion. We remand to the District Court with instruction that, unless the parties agree in writing submitted to the District Court for a method of Dub paying Sharon money or property worth $18,000 more than was awarded to her in the decree here appealed from, and an agreed accounting of the oil and gas lease income during the litigation, within 30 days of remittitur from this Court, that the District Court proceed to hold a new trial on the distribution of the marital estate. Costs awarded to Sharon.

John L. Sheehy
_____
Justice

-7-

We Concur:

_Frank I. Haswell_
Chief Justice

_John Conway Harrison_

_____

_Frank B. Morrison Jr._
Justices