No. 84-241

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

IN RE THE CUSTODY OF

KORRIE HOLM.

APPEAL FROM:   District Court of Eighth Judicial District,
In and for the County of Cascade,
The Honorable John M. McCarvel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Howard F. Strause, Great Falls, Montana

For Respondent:

Asselstine & Tadewaldt; Art Tadewaldt, Great Falls,
Montana

Submitted on Briefs:   Jan. 31, 1985

Decided:   April 11, 1985

Filed:   APR 1 1 1985

Ethel M. Harrison

Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

On September 29, 1983, Robert Holm (Father) petitioned the District Court of the Eighth Judicial District, County of Cascade to grant him custody of his daughter, Korrie Holm. A hearing was held on the motion January 24, 1984, and the motion was denied on March 1, 1984. In addition, the trial judge increased Robert's child support obligation from $150 to $300 a month. Robert appeals the denial of his motion for custody and the change in his child support obligation. We affirm the order of the District Court.

The marriage of Robert and Shirley Holm (Mother) was dissolved on February 23, 1982. The custody of the couple's two minor children, Korrie and Timothy (T.J.), was given to Shirley. They reside in Great Falls. Robert was given reasonable visitation rights and was ordered to pay $150 per month per child as child support. On January 12, 1983, Robert petitioned for custody of his two children, alleging that Shirley's custody "endangers seriously their physical, mental, moral and emotional health." Following a hearing on March 3, 1983, Robert's petition was denied. Robert did not appeal that order.

Robert vacationed from April 1 until April 23 or 24, 1983. Pursuant to an agreement between the parents, the children stayed in Red Rock, Montana, with their father, his new wife, Beverly, and her three-year-old daughter during that time. The children were then returned to Shirley until May 20, 1983, when Shirley requested Robert to again take custody. According to the testimony of both Beverly and Shirley, the children were to stay with their father for the summer because the length and difficulty of the trip between Great Falls and Red Rock often precluded visitation during

2

the winter. At Shirley's request, the children were returned to her on September 4, 1983, in time for Korrie to attend school in Great Falls.

On September 23, 1983, Shirley and her friend, Dee Coyle, went to the J Bar T bar in Great Falls, where Dee apparently introduced Shirley to Thomas Johnston. Dee was to have travelled with Johnston to Canada the following day to pick up combine headers. When Dee decided not to go, Shirley accompanied him instead.

Johnston, Shirley and Shirley's 3 1/2 year old son, T.J. left for Lethbridge, Canada, at 9:00 the next morning. Twelve miles out of town, Thomas Johnston's truck broke down. At Mr. Johnston's request, an individual unknown to Shirley, James Steyee, agreed to drive them to Canada. They arrived in Canada shortly after noon, loaded equipment onto the 20 foot flatbed trailer being pulled by Steyee's 1968 half ton pickup and returned to Great Falls. All the adults drank alcohol to some extent, both on the way to Canada and on the return trip. T. J. sat on his mother's lap.

Approximately 15 miles north of Great Falls, Steyee lost control of his pickup, overcorrected his steering and landed in the median. The pickup came to rest on its side, while the trailer flipped, landing on its wheels. T. J. was thrown from the pickup, crushed and killed. The investigating officer, William Coffman, testified at trial that the accident occurred when the trailer, which was overweighted to the rear, caused the rear of the pickup to rise off the pavement as the unit passed over swales, or bumps in the road. He further testified that he did not originally believe Mr. Steyee to be intoxicated. However, after further investigation and blood tests, Mr. Steyee was issued a ticket for driving while intoxicated.

3

Shortly after T. J.'s death, Robert filed this action requesting custody of the couple's remaining child, Korrie Holm. Shirley's response contained the following:

"3. The Court should increase the child support. Respondents need more than $150.00 per month for the support of KORRIE and Petitioner is able to pay more than $150.00 per month child support."

The trial judge heard evidence on the issue of child support at the January 24, 1984, hearing, and ultimately increased Robert's obligation to $300 per month. Relying on child support records from the Cascade County Clerk of Court's Office, he also ordered Robert to pay $1,000 in past due support.

Robert appeals, raising the following issues:

1. Did the District Court err in denying Robert Holm's petition for change of custody?

2. Did the District Court err in increasing child support payments from $150 to $300 per month and declaring $1,000 owing in back child support payments?

Section 40-4-219(1), MCA, controls when a prior child custody decree may be modified:

"40-4-219. Modification. (1) The court may in its discretion modify a prior custody decree if it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of entry of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interest of the child and if it further finds that:

"(a) the custodian agrees to the modification;

"(b) the child has been integrated into the family of the petitioner with consent of the custodian;

"(c) the child's present environment endangers seriously his physical, mental, moral, or emotional health and the harm likely to be caused by a change of environment is outweighed by its advantages to him; or

"(d) the child is 14 years of age or older and desires the modification."

4

This section requires the trial judge to only consider facts which have arisen since the prior decree or that were unknown to the court at the time of that decree. In re the Marriage of Erhardt (1976), 171 Mont. 49, 51, 554 P.2d 758, 759. Likewise, the judge should only hear evidence which has arisen since the last petition to modify or which was unknown to the court at that time. To do otherwise would be contrary to the purpose of this section - the prevention of repeated attempts by the non-custodial parent to modify custody. See Commissioner's Notes to Section 409, Uniform Marriage and Divorce Act.

We admonish counsel for both parties for their repeated references, both at the lower court level and on appeal, to evidence presented at the hearing on Robert's initial petition for modification of custody. That evidence is raised solely in an attempt to unduly prejudice the court. Like the trial judge before us, we ignore any evidence not properly before this Court.

After considering the changes since March 3, 1983, in the circumstances of Korrie and her mother, including Shirley's remarriage in December 1983 and T. J.'s tragic death, the trial judge found Shirley to be a fit and proper person to have custody of her daughter, Korrie. As long as there is substantial credible evidence to support the decision of the trial judge, it will be affirmed. In re the Marriage of Sarsfield (Mont. 1983), 671 P.2d 595, 599, 40 St.Rep. 1736, 1739.

The trial judge's refusal to find that Korrie's present environment endangers her welfare is substantiated by the testimony and reports of Pauline Slade, a social worker assigned to assist Shirley Holm since August of 1982. Ms. Slade testified that while under her supervision, Shirley's

5

mothering skills continually progressed, as did her ability to handle stress. Ms. Slade and her supervisors decided to close Shirley's case in December of 1983, stating in their report that Shirley was no longer in need of their service because "there is no evidence to indicate that Korrie is at risk of being abused or neglected in her mother's care." Further, Ms. Slade testified that she believed T.J.'s death to be the result of a tragic accident and that she believed that accident had no bearing on Korrie's safety.

Virtually uncontradicted testimony of a social worker familiar with the family involved forms a solid base in support of a trial judge's conclusions regarding custody of a child. In re the Marriage of C.C.W. and H.M.W. (Mont. 1983), 668 P.2d 1065, 1067, 40 St.Rep. 1455, 1458. Ms. Slade's testimony is supported by the testimony of several witnesses, including Pat Nowacki, Shirley's friend and neighbor. Ms. Nowacki is the mother of three children. She often exchanged babysitting services with Shirley. She considers Shirley to be a good mother, truly concerned about her child.

Though Ms. Slade's testimony is not totally uncontradicted, it is not our function to resolve conflict in the evidence. The trial judge has observed the demeanor of the witnesses and is in the better position to judge the credibility of those witnesses. In re the Marriage of C.C.W. and H.M.W., 668 P.2d at 1068, 40 St.Rep. at 1458. Brooks v. Brooks (1976), 171 Mont. 132, 134, 556 P.2d 901, 902. The trial judge's failure to find Korrie's present environment to be harmful is affirmed.

Next, we find Robert's assertion that Korrie has been integrated into his family, pursuant to § 40-4-219(1)(b), MCA, because she spent the majority of the time between March and September 1983 with them, to be erroneous. See Weber v.

6

Weber (1978), 176 Mont. 144, 147, 576 P.2d 1102, 1103-1104, where we held that vacations spent with the non-custodial parent do not result in integration into that parent's family.

Neither of the remaining two alternatives for changing custody found in § 40-4-219(1)(a) and (d), MCA, are relevant to this case. Korrie is under fourteen years of age and her mother adamantly opposes any modification in Korrie's custody arrangement. The decision of the trial judge not to modify the custody of Korrie Holm takes into account Korrie's best interests and is affirmed.

Regarding the issue of child support, Robert contends he had no notice that Shirley would be requesting the trial judge to increase his child support payment. However, the interrogatories posed by Robert to Shirley demonstrate that he in fact had notice of Shirley's request. The interrogatories involve questions pertaining to Shirley and her new husband's income and expenses. Interrogatories of this nature are irrelevant to the issue of child custody but are rather pertinent to the issue of child support. Shirley's failure to follow local District Court Rule 67 concerning financial affidavits for support cases was not raised at the lower court level. We do not consider issues raised for the first time on appeal. In re the Marriage of Glass (Mont. 1985), ____ P.2d ____, ____, 42 St.Rep. 328, 333. This rule is especially pertinent where the issue involves adherence to the lower court's own rules of procedure.

There is sufficient evidence to support the trial court's increase in child support payments. Section 40-4-208(2)(b)(i), MCA, controls when support provisions may be modified by requiring "a showing of changed circumstances

7

so substantial and continuing as to make the terms unconscionable." T.J.'s death reduced Robert's support obligation by $150. In light of the discrepancy between Robert's and Shirley's incomes, the trial judge did not abuse his discretion in changing Robert's child support obligation. The purpose of a support obligation is to make reasonable provisions for the parties' children. There is no evidence that Robert is less capable of making $300 a month payments than he was at the time of the original custody and support decree. A balance between the needs of the children and the ability of the parties' to pay, as required by In re the Marriage of McNeff (Mont. 1983), 673 P.2d 473, 475, 40 St.Rep. 2050, 2052, has been met.

Finally, there is no error in the court's order to Robert to make delinquent child support payments in the amount of $1,000. Robert was required to make the payments to the Clerk of the District Court, Cascade County, pursuant to § 40-4-206, MCA. Thus, the Clerk's records regarding the status of Robert's payments is the best evidence of any delinquent payments. Those records show delinquent payments totalling $1,000.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

8

_____
John C. Shelley
Justices

9