No. 86-514
88-164

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

(No. 86-514)

IN RE MARRIAGE OF
VALLINA RUTH HOLSTON OSTREM,
            Petitioner and Appellant,
        and
ROBERT BRUCE HOLSTON, JR.,
            Respondent and Respondent.

------------------------------

(No. 88-164)

IN RE THE MARRIAGE OF
VALLINA RUTH HOLSTON, n/k/a VALLINA RUTH OSTREM,
            Petitioner and Respondent,
        and
ROBERT B. HOLSTON, JR.,
            Respondent and Appellant.


APPEAL FROM: District Court of the Eleventh Judicial District,
             In and for the County of Flathead,
             The Honorable Roy Rodeghiero, Judge presiding.

COUNSEL OF RECORD:
        For Appellant:


            Robert B. Holston, Jr., pro se, Ketchikan, Alaska *(88-164)*

        For Respondent:
            Hash, O'Brien & Bartlett; James C. Bartlett, Kalispell,
            Montana *(88-164)*



Submitted on Briefs:   Sept. 1, 1988

Decided:   October 18, 1988

Filed:

Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

This appeal from the Eleventh Judicial District, in and for the County of Flathead, involves a custody dispute. Appellant, Robert B. Holston, Jr. (Robert), appeals the decision of the District Court, Roy C. Rodeghiero presiding, modifying a previously modified dissolution decree. Judge Rodeghiero's decision substituted respondent parent Vallina Ruth Holston Ostrem (Vallina) as the custodial parent in place of Robert. Previous to Judge Rodeghiero's decree modification, the District Court, Michael H. Keedy presiding, modified the parties' dissolution decree to substitute Robert as the custodial parent in place of Vallina. We affirm Judge Rodeghiero's decision to return custody to Vallina.

The issues presented by Robert are:

1. Whether the trial court erred in its failure to determine which parent would be the proper custodial parent?

2. Whether there was substantial evidence to make the finding of danger to the physical, mental, moral or emotional health of the children?

3. Whether a fair trial was given when the court failed to consider the court record and past testimony?

4. Whether the trial court abused its discretion by disregarding unimpeached credible evidence as to the children's custodial environment in Alaska?

5. Whether the trial court erred in failing to find that Vallina's home environment and/or attitude was no longer endangering since the past decree?

6. Whether the trial court demonstrated a biased and prejudicial treatment of the appellant by issuing ex parte orders and later taking judicial consideration of these orders without giving notice to the appellant?

7. Whether the appellant was denied due process of law or provided the proper administration of justice when the court committed procedural errors as follows:

a. Allowed the testimony of Dr. Monty Kuka, over the objection of Robert, on the dates of August 21, 1986 and August 25, 1987 without providing Robert be given notice of such appearance.

b. Allowed hearsay testimony over Robert's objection.

c. Allowed a witness, Christian Holston, to admit a tape recording, listened to it without Robert being present to object to it or hear it.

8. Whether the appellant was denied a fair trial by inviting biased and prejudiced testimony, when the court issued its order dated August 19, 1987, thereby placing the children under the extended control of the mother from their summer visitation start of June 16, 1987 through and inclusive of the hearing dates beginning on August 25, 1987?

9. Whether a fair trial was given when the court allowed the appellant to be served the order to show cause papers on the evening of August 22, 1987 and then conducted the trial beginning on August 25, 1987?

10. Whether a fair trial was given the appellant when the court considered testimony from an officer of the Court who initiated a child abuse investigation on the appellant, but failed to consider the results of this investigation and failed to seek evidence from Ketchikan, Alaska?

11. Whether the trial court erred in its denial of Robert's motion to appoint a guardian ad litem.

The relevant facts are briefly as follows: The parties dissolved the marriage by decree entered September 8, 1982. The decree made Vallina the custodial parent subject to reasonable rights of visitation for Robert.

3

Robert thereafter petitioned to modify the decree to make him the custodial parent alleging that Vallina's interference with his visitation rights seriously endangered the children. Following hearing, Judge Keedy agreed that Vallina's interference with Robert's visitation seriously endangered the children and ordered custody for Robert with reasonable visitation for Vallina. Pursuant to the order the parties' two children, Harrison and Christian, moved from Vallina's residence in Kalispell to Robert's home in Ketchikan, Alaska. At that time Harrison was six and Christian was nine. The two boys lived with Robert through the school year. During that year Robert separated from his second wife, and physically disciplined his stepson in the presence of the children.

Vallina exercised her visitation rights the ensuing summer, and at the end of her visitation period petitioned for modification. The District Court ordered the continuation of Vallina's visitation pending a hearing on the petition. Following hearing, the District Court modified custody to make Vallina the custodial parent.

Robert, acting pro se on appeal, centers his argument on the proper conclusion to be drawn from the conflicting evidence offered in the lower court. For example, in part "A" of his opening brief, Robert argues that the lower court erred because it: (1) failed to consider Vallina's intractable denial of his visitation rights, (2) failed to consider the fact that when he had custody he provided liberal visitation for Vallina, and (3) failed to consider Vallina's denial of contact with the children for Robert during summer visitation in 1987.

Part "B" of appellant's brief continues Robert's argument on the evidence in this case. Specifically, Robert

4

contends that there was no showing that the children's environment had changed since the prior modification.

In Part "C" of the brief Robert argues the District Court erred: (1) by ignoring testimony indicating that the children were healthy, and that their relationship with their father was improving, (2) by giving too much weight to the negative impact of Robert's separation from his new wife and her stepson and by ignoring the positive impact, (3) by failing to consider the fact that Vallina had moved from Kalispell to Galata, and (4) by failing to consider evidence revealing Robert as a stable and mentally healthy adult.

Robert presents a battle of the experts argument in section "II" of his brief. According to Robert, his expert's testimony should be given more weight than Vallina's expert because his expert saw the children on a more regular basis. Robert also presents a review of all the favorable testimony he offered in the lower court.

Despite the evidence provided by Robert for continuing his custody, the lower court found that:

> Rob has proved himself incapable of maintaining or portraying a loving, affectionate, stress-free and abuse-free home environment for the boys.

A review of the complete record demonstrates that substantial credible evidence supports this finding. Testimony from witnesses called by Vallina refuted testimony offered by Robert. For example, the children testified that they feared their father, and that living with him was an extremely unhappy experience. There was also evidence that without the support of their stepmother Jackie and her son Michael, their fear and anxiety had increased.

5

Psychologist Monty Kuka testified that continuing Robert's custody endangered the children's emotional health. Director of Family Services for the Eleventh Judicial District, Tom Best, testified that his interview with the children showed that their home in Alaska was one of great stress.

It is "not our function to resolve conflict in the evidence." In re Custody of Holm (Mont. 1985), 698 P.2d 414, 417, 42 St.Rep. 504, 507. The evidence provided by Vallina supports the lower court's decision. Thus, Robert's argument that the lower court ignored the evidence fails.

Robert also argues that the lower court erred in finding a change of circumstances which endangered the children. Robert asserts that the basis for the change recognized by the lower court was the children's desire to live with Vallina at the time of the most recent hearing. Robert points out that the children have always wished to reside with Vallina, thus, according to Robert, no change has occurred. We understand the logic of this argument, but we are not persuaded that no change occurred. Prior to Judge Rodeghiero's decision, the children's preference for Vallina's custody was expressed without the benefit of having resided under Robert's custody for a substantial period of time. Following the year with Robert, the preference for residence with their mother intensified. Thus, this argument fails.

Robert blames Vallina and her family for impeding the adjustment of the children to their new home. However, evidence in the record reveals that the fault for the children's unhappiness may be attributed to Robert rather than Vallina.

Robert opines that the first modification was designed to eliminate the threat that the children would never develop

6

a good relationship with their father. The second modification, according to Robert, makes that possibility a certainty. However, substantial credible evidence in the record supports the conclusion that Robert's chances of improving his relationship with the children may be improved by allowing a return of custody to Vallina.

As long as substantial credible evidence supports the decision of the trial judge, it will be affirmed. Holm, 698 P.2d at 416. Modification pursuant to § 40-4-219(1)(c), MCA, requires a finding that the children's environment seriously endangers their physical, mental, moral, or emotional health, and the harm likely to be caused by changing the environment is outweighed by benefits from the change. Here, the change from Vallina's home to Robert's home proved too bitter a pill for the children to swallow. Evidence indicated that Robert's custody seriously endangered Christian's and Harrison's emotional health. Thus, the record sustains the decision of the lower court.

Robert also argues that Judge Rodeghiero's failure to fully review the District Court file as it existed after the first modification constitutes an abuse of discretion. This argument reasons that the fact finder could not know of a change without reviewing the conditions leading to the first modification. The argument also follows from Robert's contention that a review of the conditions which led to the first endangerment finding must precede a return of custody to Vallina.

First, the relevant time period for the endangerment finding was the time the children resided with Robert in Alaska because this is the period occurring after the prior modification. Section 40-4-219, MCA. Second, testimony at the second hearing made the lower court fully cognizant of the danger posed by Vallina's custody prior to the first

modification. Evidence that this danger has been mitigated was provided when Vallina testified prior to the second modification that she would cooperate in arranging adequate visitation for Robert. Thus, there exists no error in regard to the lower court's failure to review the previously established record.

Several of the issues presented in the issue section of Robert's brief are not argued in his argument section. However, we have reviewed them and we fail to see cause for reversal in any of them. AFFIRMED.

_____
Justice

We concur:

_____

_____

_____

_____
Justices