No. 98-036

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 34N

IN RE THE MARRIAGE OF

KENNETH P. WEINHEIMER,

Petitioner/Respondent,

and

CINDERELLA S. WEINHEIMER,

Respondent/Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Linda L. Harris, Harris Law Firm, Billings, Montana

For Respondent:

Marcia Birkenbuel, Great Falls, Montana

Submitted on Briefs: May 25, 2000
Decided: February 22, 2001

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Kenneth P. Weinheimer (Kenneth) brought this action in the District Court for the Eighth Judicial District, Cascade County, for dissolution of his marriage to Cinderella S. Weinheimer (Cindy). Cindy appeals the amount and duration of the court's award of spousal maintenance and the court's inclusion of certain assets in the marital estate. We affirm.

¶3 Cindy raises the following issues on appeal:

¶4 1. Whether the District Court's award of spousal maintenance is clearly erroneous.

¶5 2. Whether the District Court's inclusion in the marital estate of funds withdrawn from an Individual Retirement Account (IRA) in 1995 is clearly erroneous.

## Factual and Procedural Background

¶6 Kenneth and Cindy were married on December 29, 1973, in Lewistown, Montana. Kenneth and Cindy had two children born of the marriage. In addition, Kenneth adopted Cindy's child from a previous marriage. All three children were over 18 by the time of trial.

¶7 Kenneth was 51 years old at the time of the June 1997 trial and he earned $40,000 a year as an Army National Guard recruiter. Cindy was 48 years old at the time of trial. Her primary responsibility during the marriage was to maintain the family home and raise the parties' children.

¶8 Cindy worked outside of the home on an infrequent basis during the marriage. She held

various jobs including employment as a cashier, a receptionist, and a bank teller. In 1991, while working as a bank teller, Cindy injured her right arm. She received disability benefits for two years. Cindy was released to return to work in 1994 and continued in her employment as a bank teller until November 1995. Cindy has not been employed outside of the home since that time. She claimed at trial that she also suffered a back injury in January 1997, and that she continues to have problems with her back and her arm and is unable to work.

¶9 Periodically throughout their marriage, Kenneth and Cindy were each gifted stock in Kenneth's family's farming corporation. Kenneth was gifted a total of 37,007 shares during the marriage and Cindy was gifted a total of 20,592 shares. In September 1996, Cindy began selling off her shares of stock. By the time of trial, she had sold all but 7,488 shares. The stock produced income annually to the shareholders and was valued at $5.34 per share. Kenneth's 1997 dividend income from his shares of stock was approximately $24,000, and Cindy's 1997 dividend income from her shares of stock was approximately $10,000.

¶10 While Cindy has not worked outside of the home since 1995, she did receive over $95,000 between April 1996 and May 1997, from the sale of some of her shares of stock, from the dividends on her stock, and from other sources. However, by the time of trial, Cindy had only $10,000 of this $95,000 remaining.

¶11 In January 1995, Kenneth received somewhere between $150,000 and $200,000 from his mother's estate. The District Court determined that Cindy had not contributed to the maintenance and preservation of this inheritance, thus the court did not include it in the marital estate.

¶12 In addition, Kenneth had set up an IRA account with funds he had inherited from his grandmother. In 1995, $37,493 was withdrawn from this account. Kenneth contended that Cindy withdrew these funds without his knowledge or consent and squandered the majority of it on gambling. The additional income taxes owing as a result of the IRA withdrawal totaled almost $13,600, which amount Kenneth paid.

¶13 Kenneth and Cindy separated in February 1996 and, on March 7, 1996, Kenneth filed a Petition for Dissolution. The trial in this action was held on June 11 and June 17, 1997.

¶14 The District Court entered it's Findings of Fact, Conclusions of Law and Decree on

October 10, 1997. In that decree, the court awarded Kenneth the family home along with a substantial mortgage, and a 1991 Oldsmobile valued at $8,500. The court also allocated to Kenneth a majority of the parties' credit card and other debts. The court awarded Cindy one-half of the marital portion of Kenneth's Army National Guard retirement. And, of the shares of stock Cindy had remaining, the court turned over 1800 shares to Kenneth as reimbursement for monies he had advanced to Cindy in June 1996, leaving Cindy with 5,688 shares of stock. The court also awarded Cindy a 1991 Chevrolet valued at $3,500.

¶15 In addition, the District Court determined that Cindy had withdrawn the $37,493 from the IRA account in 1995 and used the money for herself rather than for family finances. Hence, the court allocated those funds to her share of the marital estate. The court also credited Kenneth's share of the marital estate with the $13,600 of additional income taxes he paid as a result of this withdrawal.

¶16 The District Court further determined that while Cindy is not currently employed, she has been gainfully employed in the past and, notwithstanding her back and arm injuries, she is physically able to work in the banking business as well as various retail positions. Consequently, the court awarded Cindy maintenance in the amount of $1,200 per month for one year; a period of time which the court deemed sufficient for her to find suitable employment or to obtain training.

¶17 Cindy filed a motion to amend the District Court's findings and conclusions, but the court denied her motion on December 18, 1997. Cindy appeals the District Court's judgment.

## Issue 1.

¶18 *Whether the District Court's award of spousal maintenance is clearly erroneous.*

¶19 In reviewing an award of maintenance, this Court's role is to determine whether a district court's findings of fact are clearly erroneous. *In re Marriage of Eschenbacher* (1992), 253 Mont. 139, 142, 831 P.2d 1353, 1355 (citations omitted).

¶20 Cindy argues on appeal that the District Court erred in determining the amount and duration of maintenance because the court did not accurately address the financial circumstances of the parties. Cindy maintains that she does not have sufficient income to provide for her basic needs as her only source of income is the dividends from her shares

of stock in the family farm corporation amounting to only $375 per month. She argues that Kenneth has more than sufficient resources to pay maintenance because he has assets valued at over $200,000 and an annual income, including his salary and stock dividends, of $70,000.

¶21 Cindy also contends that she has significant health issues which preclude her from obtaining employment in any capacity other than a sedentary position. Cindy claims that the District Court has placed her in a position that she will either be forced to secure employment outside the limits of her physical abilities or she will be reduced to becoming a bag lady.

¶22 Section 40-4-203(1), MCA, provides that a district court may grant a maintenance order only if it finds that the spouse seeking maintenance "lacks sufficient property to provide for his reasonable needs; and is unable to support himself through appropriate employment." Here, although Cindy once had sufficient property to provide for her reasonable needs--i.e., her shares of stock--the evidence adduced at trial shows that in the year prior to the dissolution proceedings, she dissipated more than $95,000. In addition, Cindy was not employed at the time of trial, hence the court properly awarded her maintenance.

¶23 Section 40-4-203(2), MCA, provides that the District Court may award maintenance in an amount and for a period of time that the court deems just after considering the following facts:

> (a) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently . . . ;

> (b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

> (c) the standard of living established during the marriage;

> (d) the duration of the marriage;

> (e) the age and the physical and emotional condition of the spouse seeking maintenance; and

> (f) the ability of the spouse from whom maintenance is sought to meet his needs

while meeting those of the spouse seeking maintenance.

¶24 As previously noted, Cindy would have had sufficient property to meet her needs if she had not dissipated more than $95,000 in the year prior to the dissolution proceedings. In addition, although Cindy is not currently employed, the evidence adduced at trial shows that she is able to support herself through appropriate employment. Doctor Susan Avery, Cindy's physician since February 1990, testified that Cindy's condition did not prevent her from being employed in a position that did not require heavy lifting or extensive use of her right arm. Similarly, Doctor William Henning, who had been treating Cindy for her right arm injury since July 1991, testified that Cindy could perform a sedentary job that relied heavily on her cognitive skills and did not require heavy lifting or substantial activity with her right arm.

¶25 In addition, Andrea Weinheimer, the parties' daughter, testified as to her observations of Cindy's health. She testified that Cindy's back did not seem to bother Cindy unless someone was watching her. Moreover, the District Court was able to observe Cindy in the courtroom and on a videotape in which she was shown bending and lifting various household items. Consequently, the court determined that Cindy is physically able to work in a banking or retail position and because Cindy is capable of obtaining employment, the court determined that one year of maintenance was sufficient.

¶26 Accordingly, there was substantial evidence to support the District Court's determination regarding spousal maintenance, hence we hold that the court's award of spousal maintenance was not clearly erroneous.

## Issue 2.

¶27 *Whether the District Court's inclusion in the marital estate of funds withdrawn from an IRA in 1995 is clearly erroneous.*

¶28 The District Court awarded Cindy, as part of her share of the marital estate, the $37,493 the court determined she withdrew from Kenneth's IRA account in 1995. The court also credited Kenneth with the $13,600 in additional income taxes he paid as a result of the IRA withdrawal.

¶29 The distribution of marital property in a dissolution proceeding is governed by § 40-4-202, MCA, and under this statute, a district court is vested with broad discretion to

distribute the marital estate in a manner which is equitable to each party according to the circumstances of the case. *In re Marriage of Lee* (1997), 282 Mont. 410, 421, 938 P.2d 650, 657 (citations omitted). The standard of review of a district court's division of marital property is whether the court's findings are clearly erroneous. *Lee*, 282 Mont. at 421, 938 P.2d at 657. If substantial credible evidence exists to support the district court's judgment, it will not be disturbed absent an abuse of discretion. *Lee*, 282 Mont. at 421, 938 P.2d at 657.

¶30 Cindy admits that in July 1995, prior to their separation, she withdrew $18,671.47 from Kenneth's IRA with $2,800.72 being withheld for taxes. She denies that she withdrew any other funds from this account. Kenneth testified that he did not withdraw any funds from his IRA and that Cindy did so without his knowledge or consent. The District Court determined that Kenneth's testimony was more credible than Cindy's.

¶31 We have repeatedly held that, having had the opportunity to observe the witnesses, the trial court is in a position superior to that of the appellate court to judge the credibility of the testimony. *In re Marriage of Milesnick* (1988), 235 Mont. 88, 95, 765 P.2d 751, 755 (citing *In re Custody of Holm* (1985), 215 Mont. 413, 418, 698 P.2d 414, 417).

¶32 Cindy also objects to the District Court distributing the withdrawal from the IRA to her as her share of the marital estate because it was an asset that was not in existence at the time of the trial. She also objects to the District Court apportioning the $13,600 tax liability on the withdrawal to Kenneth as this obligation did not exist at the time of trial either. Cindy contends that as a result of the District Court's distribution, the net value of the property set over to Kenneth is undervalued by $13,600 and the net value of the property set over to her is overvalued by $37,493 which, she argues in essence means that Kenneth received almost $50,000 in net marital assets while she received nothing.

¶33 Cindy relies on *Grenfell v. Grenfell* (1979), 182 Mont. 229, 596 P.2d 205, for the proposition that the trial court must determine the net worth of the parties at the time of their divorce. We disagree. While it is true that, in general, a valuation of assets should be made at or near the time of the dissolution hearing, this is not a hard and fast rule. *Milesnick*, 235 Mont. at 96, 765 P.2d at 756 (citations omitted). The choice of time for valuation is within the broad discretion of the district court. *Milesnick*, 235 Mont. at 96, 765 P.2d at 756 (citations omitted). If a single valuation date would lead to an inequitable distribution of property, the district court may choose several different times for valuation. *Milesnick*, 235 Mont. at 96, 765 P.2d at 756 (citations omitted).

¶34 Here, it would be grossly inequitable to allow Cindy to dissipate, shortly before the parties' separation, more than $37,000 of Kenneth's IRA, which was funded by money he inherited from his grandmother, and not hold Cindy accountable. Similarly, it would be grossly inequitable to require Kenneth to pay the taxes on money that Cindy spent for her own personal use and enjoyment without allowing Kenneth to receive some form of credit.

¶35 Accordingly, we hold that the District Court's inclusion in the marital estate of funds withdrawn from Kenneth's IRA in 1995 was not clearly erroneous. We also hold that the District Court did not err in the way in which it distributed that asset and its ensuing tax liability.

¶36 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART