No. 83-151

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

IN RE THE MARRIAGE OF

SHARON M. GARST,

Petitioner and Respondent,

and

ORAH W. GARST,

Respondent and Appellant.

Appeal from: District Court of the Sixteenth Judicial District,
In and for the County of Powder River,
The Honorable A. B. Martin, Judge presiding.

Counsel of Record:

For Appellant:

James J. Sinclair, Billings, Montana

For Respondent:

Lucas & Monaghan; A. Lance Tonn, Miles City,
Montana

Submitted on Briefs: July 7, 1983

Decided: September 29, 1983

Filed: SEP 29 1983

_Ethel M. Harrison_
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Orah W. Garst appeals from the judgment of the Sixteenth Judicial District Court, Powder River County, apportioning marital property. We modify and affirm the District Court's judgment.

The issues on appeal are:

(1) Did the District Court err in its valuation of the marital ranch property?

(2) Did the District Court abuse its discretion by ordering an inequitable division of marital property?

(3) Did the District Court err by granting the wife a lien on marital property or its proceeds in a specific dollar amount?

Sharon M. Garst (Sharon) filed a petition for dissolution of marriage on July 1, 1980. Trial was held July 17, 1981 and the District Court issued findings and conclusions on September 10, 1981. Sharon appealed from that judgment and this Court affirmed in part, reversed in part and remanded the case for redetermination of the net marital estate and reapportionment of marital property. Garst v. Garst (Mont. 1982), 649 P.2d 450, 39 St.Rep. 1477.

Trial was held December 15, 1982. The principal issue at trial was the value of the net marital estate, which turned upon valuation of marital ranch property and improvements and upon other matters not challenged on appeal. All other assets and all liabilities were found to have been conclusively determined in the first trial.

Orah W. Garst (Dub) testified that the ranch consisted of the following types and amounts of acreage:

| | |
|---|---|
| hay land | 186 acres |
| crop land | 340 acres |

2

| improved pasture | 120 acres |
| grazing land | 2,603.63 acres |
| TOTAL | 3,249.63 acres |

Dub testified that the value of the ranch was $100 per acre or approximately $325,000, including improvements.

Dub testified that the "improved pasture" was originally grazing land, which had been plowed and planted for the purpose of growing sufficient crops to pay for a tractor for the ranch. After one or two crops were harvested, the land was replanted to grass and used for grazing. Dub testified that this pasture would support no more cattle than other grazing land and was worth no more than other grazing land. Sharon's expert appraiser, Dennis Jurica, testified that the improved pasture should be valued as farm land rather than grazing land.

Jurica testified that the ranch and improvements were worth approximately $500,000. His appraisal was based upon several different methods of valuation. He valued the improvements alone at approximately $75,000. Sharon testified that she felt the ranch and improvements were worth $500,000.

Dub's expert appraiser, M. L. Watson, testified that the farm land was worth $367.50 per acre and the grazing land was worth $70.44 per acre. Watson's appraisal, prepared before trial, was based upon acreage figures different from those testified to by Dub at trial. Watson testified that these differences affected the valuation of the ranch. The acreage figures testified to by Dub at trial were substantiated by Jurica's testimony. Sharon's counsel stated to the Court that she was willing to accept Dub's acreage figures. Watson further testified that ranch improvements were worth $55,000, and the ranch, $387,000, including improvements.

The District Court found that the value of the ranch and improvements was $485,804.69. The Court accepted the acreage figures supplied by Dub and the values per acre supplied by Watson. The Court accepted Jurica's testimony regarding value of the 120 acres of improved pasture, valuing that land at the higher farm land figure. Ranch value was calculated by the District Court as follows:

| | |
|---|---|
| 340 acres farmland and 120 acres farmland returned to pasture, at $367.50 per acre: | $169,050.00 |
| 186 acres hayland at $367.50 per acre: | 68,355.00 |
| 2,603.63 acres range land at $70.44 per acre: | 183,399.69 |
| Total | $420,804.69 |

To this value, the Court added a compromise value for improvements of $65,000, for a total ranch value of $485,804.69.

The Court found there was a net marital estate of $204,374, to which each party was equally entitled. The Court ordered that all ranch assets be distributed to Dub, who in return was to pay Sharon $102,187 or half of the net marital estate. Because it was doubtful that Dub could raise that amount by borrowing against the ranch, the Court ordered that if no payment agreement was worked out within 90 days, the ranch property was to be sold. The Court granted Sharon a lien upon the ranch property or proceeds in the amount of $102,187. Dub appeals.

I.

Dub first contends that the District Court erred in its valuation of marital ranch property. He argues the District Court rejected, without stating reasons, the opinions of both experts, and that the Court's valuation figure was thus chosen arbitrarily and is not supported by the evidence.

4

However, the record clearly shows these contentions are without merit.

It is well-settled that this Court will not disturb the fact findings of the District Court if they are based upon substantial credible evidence. Kowis v. Kowis (Mont. 1983), 658 P.2d 1084, 1087, 40 St.Rep. 149, 152. In Kowis, we stated that although conflicts may exist in the evidence presented, it is the duty of the trial judge to resolve such conflicts. His findings will not be disturbed on appeal where they are based on substantial though conflicting evidence, unless there is a clear preponderance of evidence against such findings. 658 P.2d at 1087, 40 St.Rep. at 152.

We find there is substantial credible evidence to support the District Court's valuation of the marital ranch property.

In reaching its determination of ranch value, the District Court used Dub's acreage figures and the values supplied by Dub's appraiser, Watson. The Court did not reject the testimony of Watson. The record clearly shows that the acreage figures used by Watson in preparation of his appraisal were erroneous. The Court applied Watson's values per acre to the acreage figures testified to by Dub at trial. Those figures were supported by Jurica's testimony, and Sharon indicated to the Court that they were acceptable to her. The Court questioned the witnesses with respect to acreage figures.

The District Court was not bound to accept either all or none of the testimony of any witness. In Goodmundson v. Goodmundson (Mont. 1982), 655 P.2d 509, 39 St.Rep. 2295, we stated:

> "In adopting proposed values or in setting its own, the District Court is free in its discretion to adopt the recommendation of a party or a layman

5

> over that of an expert. Dickerson v. Dickerson
> (1980), ____ Mont. ____, 614 P.2d 521, 37 St.Rep.
> 1286. Also, the District Court may average the
> values given by experts to arrive at an equitable
> solution. . .. In Re the Marriage of Jensen
> (1981), ____ Mont. ____, 631 P.2d 700, 38 St.Rep.
> 1109.
>
> "Here, the District Court adopted some findings
> supported by the wife's valuations, some findings
> that were averages of values set by experts, and
> some findings based on the husband's testimony and
> that of his appraisers. The husband claims this is
> illogical and inconsistent. . ..
>
> "We disagree with the husband simply because the
> findings are supported by the evidence and that is
> the determinative test." 655 P.2d at 511-12, 39
> St.Rep. at 2297.

Here, as in Goodmundson, the District Court's valuation was based on selected portions of the testimony of various witnesses. Each step of the District Court's valuation process was supported by substantial credible evidence.

Dub argues that the District Court committed reversible error in failing to state its reasons for rejecting the valuation of the expert witnesses, citing Marriage of Peterson (Mont. 1981), 636 P.2d 821, 823, 38 St.Rep. 1723, 1726. Peterson is distinguishable, however. There, we stated that we were unable upon review of the record to say that the District Court properly exercised its discretion, without some indication of its reasoning. 636 P.2d at 824, 38 St.Rep. at 1726. Here, the reasons are clear from the record for the Court's acceptance or rejection of various testimony. There is no merit in Dub's contention that the District Court committed reversible error in accepting the testimony of Dub and his expert witness.

Dub contends that the District Court erroneously valued the 120 acres of improved pasture as farm land rather than grazing land. The testimony was in conflict on this question. Dub testified that the improved pasture was worth no more than the grazing land. But Jurica testified that the

property should be valued as farm land. The land in question had been farmed by Dub for at least one or two seasons, and crops were harvested. The District Court's finding that this land should be valued as farm land is supported by substantial credible evidence.

We find no error in the District Court's valuation of the marital ranch property.

## II.

Dub next contends that the District Court abused its discretion by ordering an inequitable method of division of marital property. More specifically, he argues that the Court erred in ordering that the marital ranch property be sold so that Sharon will receive her share of the net marital estate. We reject this argument.

The District Court has far-reaching discretion in making property divisions. The reviewing court does not substitute its judgment for that of the trial court, and will not alter a judgment unless it finds an abuse of discretion, i.e., that the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. Kowis, 658 P.2d at 1087, 40 St.Rep. at 153.

Dub argues that Montana follows the rule that a family ranch should be kept intact wherever there is a reasonable means of providing the other spouse with his or her equitable share of marital property short of selling the land, citing Biegalke v. Biegalke (1977), 172 Mont. 311, 564 P.2d 987. He notes that in furtherance of this policy, Montana courts allow one spouse to buy out the equitable share of the other spouse in a lump sum or according to installment schedules established by the court or the parties. Marriage of Jacobson (1979), 183 Mont. 517, 600 P.2d 1183. Dub argues

7

that the District Court here failed to reasonably and realistically consider his ability to buy Sharon's equitable interest in the ranch through the ranch's income-producing or borrowing capacity.

These general principles of property division are not disputed. However, the policy of keeping a family ranch intact cannot be used to deprive a spouse of his or her equitable share of the marital estate. Marriage of Owen (Mont. 1980), 609 P.2d 292, 295, 37 St.Rep. 616, 619.

In resolving this issue it is important to consider the District Court's finding number 8:

> "The Court finds that [Dub] is without financial means to pay [Sharon] her one-half share, and the Court has been advised by counsel that there is doubt if [Dub] can raise that amount by further encumbering the ranch property. In the event [Dub] is unable to pay [Sharon] the amount awarded or cannot arrive at an agreement with [Sharon] for installment payments within 90 days from date of judgment, all ranch property belonging to the marital estate shall be sold. . .."

Clearly, the District Court recognized the principles urged by Dub. The Court gave Dub 90 days to arrange financing or to work out an agreement with Sharon for purchase of her interest. However, the Court found it was doubtful whether such an arrangement was possible. The marital ranch liabilities were substantial, making it unlikely that Dub could obtain additional financing against the ranch assets. Dub concedes that the ranch is already subject to "tremendous liabilities." The District Court's order is an equitable and fair decision with respect to both parties. If Dub is able to arrange financing, he can preserve the ranch. However, if he cannot, Sharon's interest is protected.

On this record, we cannot say that the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason. Finding no abuse of

8

discretion, the District Court's order that the ranch be sold if no purchase agreement is reached within 90 days is affirmed.

III.

Finally, Dub contends that the District Court erred in granting Sharon a lien on ranch property or proceeds in the specific amount of $102,187, after stating the property was to be divided equally. The substance of this contention is that the percentage split of the net marital estate will not be 50-50 if the ranch sells for either more or less than the value determined by the District Court. He argues that to grant the lien for a specific amount under these circumstances is to act arbitrarily and without employment of conscientious judgment. We agree.

The lien amount of $102,187 is based upon the entire net marital estate of the parties. If the ranch property sells for more than $485,804 or if other ranch assets are sold for more than the values set by the District Court, the lien amount will be less than half the net marital estate, and Sharon will receive less than her share. On the other hand, if assets are sold for less than the values determined by the Court, the lien amount will be greater than half, and Dub will receive less than his share.

This problem is easily corrected by modifying the decree to state that the lien shall be in the amount of $102,187 or, in the event that property is sold for more or less than the value determined by the District Court, the lien shall be adjusted accordingly so that the lien is for one-half of the net marital estate. We order that the judgment be so modified.

Finally, we note that the trailer home included in the District Court's valuation of the net marital estate has

9

apparently been distributed to Sharon. If this is so, the value of the trailer must be subtracted from the amount of the net marital estate due Sharon from Dub, and the trailer should be paid for with proceeds of the sale of marital assets. Similar adjustments are to be made for any other items included in the net marital estate and already distributed.

With the modifications noted above, we affirm the judgment of the District Court.

Justice

We Concur:

Chief Justice

Justices

10