No. 83-339

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

ZORIENE FRAZIER,

        Petitioner and Respondent,

   -vs-

GEORGE LOREN FRAZIER, **Personal** Representative
of the Estate of George J. Frazier, Deceased,

        Respondent and Appellant.

APPEAL FROM:   District Court of the Fifth Judicial District,
              In and for the County of Madison,
              The Honorable Arnold Olsen, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        R. Thomas Garrison, Virginia City, Montana

    For Respondent:

            Jack M. Scanlon, Helena, Montana
            Garrity, Keegan & Brown; Donald Garrity,
            Helena, Montana

Submitted on Briefs: November 17, 1983

Decided: February 9, 1984

Filed:

Ethel M. Harrison
_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This action was commenced to determine the value of the estate of the deceased, George J. Frazier. The District Court of the Fifth Judicial District, the Honorable Arnold Olsen presiding, heard testimony on the matter and determined the fair market value of the estate. From this determination the personal representative appeals.

George J. Frazier died on October 13, 1980. He was survived by his wife, Zoriene N. Frazier; and three children, Mary Ellen Aszklar, George Loran Frazier and Sandra Louise Bostwick. The deceased's will was admitted to probate on October 20, 1980 and his son Loran was appointed personal representative of the estate. The will contains three gifts to his surviving spouse. First, she receives all decedent's personal effects, household furnishings and appliances. Second, she receives outright an amount equal to fifty percent of the adjusted gross estate, with the personal representative having the power to select the assets used to satisfy this bequest. This second gift was designed to pass free from federal estate taxes by qualifying for the marital deduction, and is at the center of this dispute. Finally, Zoriene was given a life estate in the remaining property with the children to receive this remainder in equal shares when she dies.

On July 10, 1981, Loran filed the Federal Estate Tax return for the estate and listed the value of the gross estate as $468,961.04, and the value of the adjusted gross estate as $332,058.87. Zoriene's gift of one half the adjusted gross estate was computed to be $166,029.43.

However, Zoriene believed the real estate owned by the decedent at the time of his death had been undervalued and attempted to persuade Loran that she was correct. When this failed, she filed a Petition for Order to Determine the Fair Market Value of Assets and Marital Deduction Portion of Estate, alleging the fair market value of the gross estate to be $608,461, and her marital deduction portion to be $235,780.

A hearing on the motion was held on October 20, 1982, before District Judge Arnold Olsen sitting without a jury. Both sides presented the testimony of various witnesses for their respective positions. As noted above, the focus of this dispute was the valuation of the ranch owned by the decedent at the time of his death. Zoriene presented two witnesses besides herself, who testified to the value of the property. Jack McLeod, a real estate broker and appraiser with twenty two years experience, testified to the methods of appraisal, the attributes of the property in question and the estimated value of the property which he put at approximately $425,000. Larry Rule, a real estate broker with thirteen years experience, testified to the value of the property based on comparable sales in the area. On that basis, he estimated the fair market value of the property at $498,000.

Loran presented three witnesses besides himself. Tom Hacker testified that he was a retired rancher who had been doing appraisal work "just to keep busy more than anything else" for at least fifteen years. He estimated the property value to be $260,000 as of the date of death. Robert Smith, president of the Bank of Sheridan, testified that he had

been valuing real estate for 42 years as a banker, and had been a real estate broker for seventeen years. He estimated the fair market value at $249,000. Wanda Keyser, a real estate broker with six years experience, echoed Mr. Smith's testimony.

After the hearing, the judge inspected the property first hand before entering his findings of fact and conclusions of law. He specifically found,

> "That from all the evidence presented to the Court by expert witnesses the testimony of Mr. Jack McLeod carries the greater weight, and is the most clear, credible, and convincing as to the fair market value of the Estate's real estate on October 13, 1980. That at the date of the decedent's death the ranch consisting of its land and improvement had a total fair market value of $425,000.00 . . . "

Based on this finding, the court concluded that the gross value of the estate was $644,961, and ordered that the estate pay Zoriene $58,076, representing the difference between the computation of the marital deduction portion before and after the judgment setting the new value. From the findings and conclusions and the judgment, Loran as personal representative of the estate appeals.

Loran contends the District Court erred by giving no reason for adopting the valuation offered by Zoriene. The basis of this assertion is certain language contained in our opinion in, In Re the Marriage of Peterson (1981), 195 Mont. 157, 636 P.2d 821. Peterson involved a question of the valuaton of a marital estate, where the District Court adopted the valuation of one appraiser over another without stating reasons for its decision. There was a disparity of over $300,000 in the valuations presented to the District Court, and the appellant claimed the District Court abused

-4-

its discretion in adopting the lower figure. In remanding the case, we stated:

> "The District Court is free to follow one appraisal and reject another. However, here there is a wide disparity in valuation, and we are unable to review for abuse of discretion in the absence of findings by the trial court supporting the valuation selected . . .
>
> "Upon review of the record, we cannot say the District Court properly exercised its discretion in selecting the value it did without some indication of its reasons for doing so." 195 Mont. at 162, 636 P.2d at 823-4.

Loran contends the reasoning given by the District Court was insufficient. We disagree. This Court has had several opportunities to interpret the holding in Peterson, supra, and we have held that while the District Court is to give reasons for choosing one appraisal over another when there is a wide disparity in proposed values, the District Court will not be reversed if the record reveals a proper exercise of discretion. In Re the Marriage of Garst (Mont. 1983), 669 P.2d 1063, 40 St.Rep. 1526 and In Re the Marriage of Popp (Mont. 1983), 671 P.2d 24, 40 St.Rep. 1747.

This rule is consistent with the standard followed by this Court when reviewing a judgment in a non-jury trial based on conflicting evidence. "Although conflicts may exist in the evidence presented, it is the duty of the trial judge to resolve such conflicts. His findings will not be disturbed on appeal when they are based on substantial though conflicting evidence, unless there is a clear preponderance of evidence against such findings." Cameron v. Cameron (1978), 179 Mont. 219 at 227, 587 P.2d 939 at 944. It is not the lack of specific findings which constitutes reversible error, but the lack of substantial

evidence to support the judgment. We look both to the District Court's express reasoning and the evidence in the record to determine whether ample evidence exists.

We find the judgment of the District Court in the case at bar correct in both aspects. As noted above, the trial judge stated his reasons for adopting the value proposed by Mr. McLeod in his findings of fact and conclusions of law. He simply felt that Mr. McLeod's testimony was the most credible and convincing. The record clearly supports such a finding, especially in light of the amount of experience vested in Mr. McLeod's opinion, as contrasted with the only other appraiser who testified and stated he did appraisals, "just to keep busy more than anything else." The stated reasons and the evidence in the record both support the judgment.

Affirmed.

_John Conway Harrison_
Justice

We concur:

_Daniel J. Shea_

_John C. Sheehy_

_Frank B. Morrison_

_L. C. Gulbrandson_     .
Justices