No. 88-100

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

IN RE THE MARRIAGE OF
CHRISTINE BOZARTH MILESNICK,

Petitioner and Respondent,

and

THOMAS OWEN MILESNICK,

Respondent and Appellant.

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Joseph Gary, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

James A. Johnstone, Bozeman, Montana

For Respondent:

John P. Atkins; Bryan & Atkins, Bozeman, Montana

Submitted on Briefs: Sept. 1, 1988

Decided: December 8, 1988

Filed:

_Earl M. Herrin_
Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Both parties in a dissolution action appeal the property distribution ordered by the District Court of the Eighteenth Judicial District, Gallatin County. The husband also appeals the District Court's refusal to allocate dependency exemptions between the parties. We affirm.

The husband raises the following issues on appeal:

1. Whether the District Court abused its discretion by refusing to allocate the tax exemptions for the parties' dependent children.

2. Whether the District Court abused its discretion in valuing the husband's interest in a trucking partnership.

3. Whether the District Court abused its discretion by failing to include the ranch operating debt when it computed the net worth of the husband's estate.

On cross-appeal, the wife adds the following issue for review:

1. Whether the District Court abused its discretion by discounting the value of the parties' stock in the family ranch corporation.

Christine and Thomas Milesnick were married on September 15, 1979. They were separated on April 1, 1986. During the marriage, two sons were born. Thomas also adopted Christine's son of a previous union.

The husband brought substantial assets into the marriage, including a trucking partnership, a two-story home, the entire interest in 106 acres, and a one-half interest in 348 acres. The real property was heavily encumbered.

The other interest in the 348 acres was owned by the husband's parents. In 1980, the parents incorporated their holdings. Both Thomas and Christine were given, as gifts, shares in the corporation. Thomas received 2,284 and

Christine received 1,790 of the total 40,000 outstanding shares.

Throughout the marriage the couple engaged in the farming and ranching business. The wife did not work outside the home and ranch until February, 1986. At the time of the dissolution hearing, she was employed as a secretary and swimming instructor.

The wife petitioned for dissolution on August 29, 1986. A two-day hearing was held on May 28 and 29, 1987, after which the District Court issued findings of fact, conclusions of law and a decree of dissolution with an accompanying memorandum.

The District Court awarded the parties joint custody of the children and ordered the husband to pay child support of $636 for 10 months each year. The court recommended that the children reside with the wife during the school year and at least one month each summer but declined to specifically order such an arrangement, leaving it to the parties to work out the details themselves.

The trial court divided the property of the parties by comparing the net value of the husband's separate assets as of 1979, the time of the marriage, and 1986, the time of the filing of the petition for dissolution. The court concluded that the husband's property had depreciated by $75,940 over the seven-year period. The court deducted the amount of depreciation from the value of the marital assets, leaving a net of $94,334. It then split that number in half, awarding each party 50 percent or $47,167. Determining that the marital property, consisting mainly of stock in First Security Bank and Milesnick Ranch, Inc., should remain with the husband, the court ordered Thomas to pay a monetary sum to Christine as her share of the property award. Thomas was

- 3 -

to pay an initial remittance of $30,000 with the balance to be paid in four annual installments of $4,300.

Unhappy with the outcome of the decree, both parties moved the District Court to amend the findings of fact and conclusions of law. The court denied all but one of the parties' motions to amend. The amendment adopted, that allowing cost of living increases for child support, is not at issue here. The majority of the amendments denied comprise the topics of the present appeal.

The first issue for our consideration concerns whether the District Court abused its discretion by refusing to allocate the federal income tax exemptions for the parties' dependent children. Resolution of this question involves a two-step analysis. We must first examine whether the Montana state courts have jurisdiction to allocate the exemption. If the state courts have jurisdiction, we must then determine whether the District Court abused its discretion by failing to make the allocation.

Until the Tax Reform Act of 1984, there was general agreement that the state courts had the power to assign the dependency exemptions for the children of parties to a dissolution action. See, e.g., In Re the Marriage of Greeler (Minn.Ct.App. 1985), 368 N.W.2d 2; MacDonald v. MacDonald (N.H. 1982), 443 A.2d 1017; Niederkorn v. Niederkorn (Mo.Ct.App. 1981), 616 S.W.2d 529. The pertinent statute at that time, 26 USC § 152(e) (1976), provided that the custodial parent received the exemption unless the dissolution decree gave the exemption to the noncustodial parent and that parent provided at least $600 toward the support of the child during the year. If the divorce decree was silent on the matter, the noncustodial parent was entitled to the exemption if he or she provided $1,200 or

more in child support during the year and the custodial parent could not establish that he or she contributed more.

The dependency exemption provision of the Internal Revenue Code was originally enacted in 1967. Its aim was to provide a vehicle by which divorced parents could negotiate the exemption between themselves without involving the Internal Revenue Service (Service). See, Comment, Tax Planning in Divorce: Both Spouses Benefit from the Tax Reform Act of 1984 (1985), 21 Willamette L.Rev. 767, 801.

Unfortunately, the statute did not promote amicable parental settlements. The Service continually found itself caught in battles over which parent was entitled to the exemption. Therefore, in 1984, Congress amended the law.

The present statute provides that the parent with physical custody of the child for the greater part of the year shall take the exemption unless (1) he or she signs a waiver that releases the exemption to the noncustodial parent or (2) the noncustodial parent received the right to claim an exemption in a divorce decree dated prior to January 1, 1985 and he or she contributed at least $600 per year in support. 26 U.S.C. § 152(e). There is no mention in the statute, as amended, of the effect of the allocation of exemptions in a decree of dissolution issued after January 1, 1985.

A small number of courts have held that the 1984 amendments divested the states of jurisdiction to award dependency exemptions in conjunction with dissolution actions. Lorenz v. Lorenz (Mich.Ct.App. 1988), 419 N.W.2d 770; In Re the Marriage of Vinson (Or.Ct.App. 1987), 732 P.2d 79, review denied, 736 P.2d 566. The majority of courts that have considered the question, however, have held that the amendments to 26 USC § 152(e) were enacted merely to promote administrative efficiency and were not intended to encroach

upon the state's power to determine financial matters between the parties in a dissolution action. Hughes v. Hughes (Ohio 1988), 518 N.E.2d 1213, <u>cert.</u> <u>denied</u>, ___ U.S. ___, 109 S.Ct. 124, ___ L.Ed.2d ___; Cross v. Cross (W.Va. 1987), 363 S.E.2d 449; In Re the Marriage of Lincoln (Ariz.Ct.App. 1987), 746 P.2d 13; Fudenberg v. Molstad (Minn.Ct.App. 1986), 390 N.W.2d 19.

The majority's position is supported by the explanation of the changes given by the Staff of the Joint Congressional Committee on Taxation.

> The present rules governing the allocations of the dependency exemption are often subjective and present difficult problems of proof and substantiation. The Internal Revenue Service becomes involved in many disputes between parents who both claim the dependency exemption based on providing support over the applicable thresholds. The cost to the parties and the Government to resolve these disputes is relatively high and the Government generally has little tax revenue at stake in the outcome. The committee wishes to provide more certainty by allowing the custodial spouse the exemption unless that spouse waives his or her right to claim the exemption. Thus, dependency disputes between parents will be resolved without the involvement of the Internal Revenue Service.

H.R. Rep. No. 432, Part II, 98th Cong., 2d Sess. 1498-99, <u>reprinted</u> <u>in</u> 1984 U.S. Code Cong. & Ad. News 697, 1140.

The above report persuades us that the 1984 changes were not enacted to strip state courts of the power to allocate dependency exemptions between parties to a dissolution action. The report demonstrates that the purpose of the amendments was to reduce the Service's involvement in litigation over questions of dependency exemptions. We see no reason why a state court's allocation of the deductions in a decree of dissolution will interfere with this goal. If a custodial parent defies a district court's order by refusing

to sign the waiver of exemptions, the noncustodial parent can enforce the decree by way of a contempt action in state court. The Service need not be involved in any aspect of the dispute.

Having decided that the District Court had the jurisdiction to allocate dependency exemptions, we must now determine whether the court abused its discretion by refusing to do so. We hold that the assignment of dependency deductions is a factor a district court may consider when ordering child support. It is not an abuse of discretion, however, for a district court to refuse to award the exemptions to either party.

A failure to assign the deductions to the noncustodial parent does not prevent that party from ever receiving the exemptions. The tax code provides that the custodial parent may voluntarily relinquish the exemptions to the other parent by signing a waiver. This provision provides flexibility. It allows the parties to examine, on a yearly basis, their respective tax burdens to ascertain which party would benefit most from the exemptions. The District Court may not wish to interfere with this flexibility by ordering the custodial parent to execute a waiver or be subject to contempt.

Furthermore, by providing that the custodial parent may claim the exemption unless he or she executes a release, the statute has given that parent added leverage to ensure that the noncustodial parent pays the court-ordered child support. By leaving the exemptions in the hands of the custodial parent, the district court gives the noncustodial parent an incentive to keep current with his or her child support payments. It also gives the custodial parent added bargaining power at tax time.

In summary, we hold that the 1984 amendments to the federal statute regarding exemptions for dependent children

of divorced parents did not divest state courts of jurisdiction to allocate the exemptions in a decree of dissolution. A district court may assign the exemptions if it finds that the allocations would serve the best interests of the children and the parties. However, a district court's refusal to award the exemptions does not constitute an abuse of discretion.

The next issue called to our attention concerns the value of the husband's interest in a trucking partnership. The husband argues that no substantial credible evidence exists to support the partnership value found by the District Court.

In 1977, the husband formed a partnership with another individual. The partnership purchased a cattle truck and a Public Service Commission permit authorizing the commercial hauling of livestock throughout the state. In 1984, the truck was destroyed. The only partnership asset that remained at the time of the dissolution was the PSC permit.

The husband testified that the partnership was worth $2,000. The wife did not testify as to the value of the partnership, although she estimated its worth as $2,500 in her proposed findings of fact and conclusions of law. The District Court valued the partnership at $10,000. The court based its valuation on the tax returns of the parties, such returns showing a partnership gain three out of five years.

A district court has far reaching discretionary powers to determine the value of property in a dissolution action. Its valuation can be premised on expert testimony, lay testimony, documentary evidence, or any combination thereof. See In Re the Marriage of Reich (Mont. 1986), 720 P.2d 286, 287-88, 43 St.Rep. 1167, 1168-69; In Re the Marriage of Garst (1983), 206 Mont. 89, 94-95, 669 P.2d 1063, 1066. As long as the valuation is reasonable in light of the evidence

submitted, we will not disturb that finding on appeal. In Re the Marriage of Luisi (Mont. 1988), 756 P.2d 456, 459, 45 St.Rep. 1023, 1026; In Re the Marriage of Staudt (Mont. 1985), 700 P.2d 175, 177, 42 St.Rep. 740, 743.

Conflicting evidence was before the District Court in the present case. When confronted with conflicting evidence, the court must use its fact-finding powers to determine which evidence is more credible. Having had the opportunity to observe the witnesses, the trial court is in a position superior to that of the appellate court to judge the credibility of the testimony. In Re the Custody of Holm (1985), 698 P.2d 414, 417, 42 St.Rep. 504, 507. Unless there is a clear preponderance of the evidence against the District Court's valuation, its findings, where based on substantial though conflicting evidence, will not be disturbed on appeal. Garst, 206 Mont. at 93-94, 669 P.2d at 1066.

The conflicting evidence in the instant case leads us to conclude that the District Court did not abuse its discretion by assessing the partnership value at $10,000. On one hand, the husband testified that the livestock truck was destroyed in 1984 and that the value of the remaining asset, the PSC permit, was only $2,000. The 1986 tax return, which attributed no income to the partnership, supported the husband's appraisal. On the other hand, the 1981 to 1985 tax returns reflected partnership gains three out of five years. The 1985 return in particular showed an income of $12,638, even though the truck had not been in service that year. The husband testified that a portion of the 1985 income was due to an insurance settlement on the truck. However, no evidence was introduced to account for the remainder of that year's income. There was also testimony that the permit could be leased to other trucking outfits for a percentage of the profits.

With all of the evidence taken together, it was reasonable for the District Court to assume that, although the truck had been destroyed in 1984, the partnership retained income producing potential and thus had a higher value than that attributed to it by the husband. There was substantial documentary evidence to support the District Court's valuation. The valuation was reasonable in light of the evidence submitted. There was no abuse of discretion.

The husband next contends that the District Court abused its discretion by failing to include the 1986 farm operating debt when it computed the net worth of his estate. The husband argues that the trial court erred by valuing the debt at a time different from the time at which it evaluated the other assets and liabilities. We do not agree that this procedure was error.

Generally, valuation of assets should be made at or near the time of the dissolution hearing. In Re the Marriage of Hammill (Mont. 1987), 732 P.2d 403, 406, 44 St.Rep. 220, 223. This rule, however, is not hard and fast. The choice of time for valuation is within the broad discretion of the district court. In Re the Marriage of Krause (1982), 200 Mont. 368, 379, 654 P.2d 963, 968; In Re the Marriage of Krum (1980), 188 Mont. 498, 503, 614 P.2d 525, 527. If a single valuation date would lead to an inequitable distribution of property, the District Court may choose several different times for valuation. See, In Re the Marriage of Halverson (Mont. 1988), 749 P.2d 518, 45 St.Rep. 162; In Re the Marriage of Hurley (Mont. 1986), 721 P.2d 1279, 1286, 43 St.Rep. 1271, 1278.

In the instant case, the District Court used September, 1986, a time shortly after the petition for dissolution had been filed, as the valuation date for the majority of the assets and liabilities. The court assessed the operating

debt, however, as of the date of the dissolution hearing, nine months after the petition had been filed. The husband argues that this failure to appraise all of the assets and liabilities at the same time resulted in an overvaluation of his net worth.

In September, 1986, the husband owned livestock worth $138,319 and owed an operating debt of $24,000. By the time of the dissolution hearing, some of the cattle had been sold and the operating debt had been paid with the proceeds. The sale of the cattle and payment of the debt were made to effectuate a tax savings to the husband.

In its memorandum denying the husband's motion to amend the findings of fact, the trial court recognized that, along with erasing the operating debt, the sale of cattle reduced the value of the herd. The court refused, however, to include the operating debt in its computations. It also declined to decrease its valuation of the herd. The court stated that these factors had been included in its overall valuation of the assets as well as its decision to distribute the property equally between the parties.

Under the circumstances, we cannot hold that the District Court abused its discretion. The memorandum demonstrates that the court considered the facts as presented and determined that differing valuation dates would aid in the equitable division of the property. In the final analysis, an equitable distribution was accomplished. We therefore affirm the District Court on this issue.

On cross appeal, the wife argues that the District Court erred by discounting the value of the parties' stock in the Milesnick family corporation. She maintains that discounting stock in a closely held corporation is improper where the stock's value has been based on an appraisal of the underlying assets.

Milesnick Ranch, Inc. was formed by the husband's parents in 1980. Soon after the creation of the corporation, the parents began gifting the stock to their children and their children's spouses. Through this gifting program Thomas received 2,284 and Christine received 1,790 of the total 40,000 shares outstanding.

In a letter introduced into evidence by the husband, the corporation's accountants placed the fair market value of the Milesnick Ranch stock at $53.85 per share. The appraisal was based on net asset value, that is, the sum of the fair market value of the assets less the liabilities. In its findings of fact, the District Court discounted the stock by 25 percent, from $53.85 to $40.39, to take into account the couple's status as minority shareholders in the corporation.

We have previously approved the practice of discounting stock in a closely held corporation. In Re the Marriage of Jorgensen (1979), 180 Mont. 294, 300, 590 P.2d 606, 610. However, a district court need not discount the stock in a close corporation in all instances. See, In Re the Marriage of Johnston (Mont. 1986), 726 P.2d 322, 43 St.Rep. 1808; In Re the Marriage of Buxbaum (1984), 214 Mont. 1, 692 P.2d 411.

The wife relies on Buxbaum for the proposition that discounting stock is improper whenever the market value is founded on net asset value, as it is in the instant case. This is not so. Whether a discount is proper depends on the facts of the case, not on the method used to ascertain the underlying value of the stock. In Buxbaum we approved the district court's decision not to discount for a minority interest because the court found that, even though the husband was a minority shareholder, he had actual control of the corporation.

A discount for a minority interest is appropriate when the minority shareholder has no ability to control salaries, dividends, profit distributions and day-to-day corporate operations. Jorgensen, 180 Mont. at 300, 590 P.2d at 610. In the present case, there is no doubt that Thomas and Christine Milesnick were minority shareholders. Together they owned only 4,074 shares of stock, a little over 10 percent of the total number. Furthermore, although Thomas worked with his parents on the ranch and had some input into day-to-day operations, the parents had the final say on all major decisions. We do not believe, under these circumstances, that the District Court abused its discretion by discounting the stock in Milesnick Ranch by 25 percent due to the parties' minority interest in the corporation.

In conclusion, we hold that the District Court did not err in its valuation of the husband's partnership interest or in its valuation of the parties' stock in Milesnick Ranch. Nor did the District Court err by failing to include the operating debt in its computation of the net worth of the husband's estate or by refusing to allocate the tax exemptions for the parties' dependent children.

We affirm the District Court.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

- 13 -