NO. 94-184

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994


IN RE THE MARRIAGE OF

PRISCILLA DALE QUICK ROBINSON,

     Petitioner and Respondent,

  and

CHARLES ROBINSON,

     Respondent and Appellant.

FILED

DEC 06 1994

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the First Judicial District,
                In and for the County of Lewis and Clark,
                The Honorable Thomas C. Honzel, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

           John L. Hollow, Attorney at law,
           Helena, Montana

       For Respondent:

           Ann L. Smoyer, Smoyer Law Firm,
           Helena, Montana


Submitted on Briefs:  October 13, 1994

Decided:  December 6, 1994

Filed:

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Petitioner Priscilla Dale Quick Robinson petitioned the First Judicial District Court, for Lewis and Clark County, for dissolution of her marriage to Charles Robinson on August 20, 1992. On March 2, 1994, the District Court entered its decree dissolving the parties' marriage. The decree (1) awarded joint custody of their minor child, Douglas, but awarded Priscilla primary care of Douglas; (2) ordered Charles to pay child support and maintenance; (3) ordered that the family home be sold and that Priscilla receive 65 percent of the net proceeds; (4) awarded Priscilla 35 percent of Charles's retirement benefit; and (5) distributed the remaining assets as the parties had previously agreed. Charles appeals. We affirm.

The issues we find dispositive on appeal are:

1. Did the District Court err in its calculation of the net worth of the marital estate?

2. Did the District Court err in its distribution of the marital estate?

3. Did the District Court err when it awarded Priscilla a fixed percentage of Charles's retirement benefit?

### FACTUAL BACKGROUND

Charles and Priscilla were married on September 9, 1973, in Verdi, Nevada. They lived in Reno, Nevada, until July 1981. Charles was employed by the Internal Revenue Service prior to and throughout their marriage. Priscilla was also employed during the marriage, but has been limited to temporary employment since 1981.

The parties' only child, Douglas, was born January 19, 1981. In 1981, the IRS promoted Charles and transferred him and his family to Montana. Because of this transfer, Priscilla quit her job to care for Douglas and became a full-time homemaker.

During the parties' marriage, Charles's income increased from approximately $33,000 a year in 1981, to over $61,000 a year at the **time** of the dissolution. While in Montana, Priscilla occasionally found temporary employment, but has not found long-term employment since leaving Nevada.

Charles ultimately became chief of planning and special programs at the Helena IRS office, a position which he held at the time of the dissolution. Since the parties' separation in 1992, Priscilla has received job training, but has been unable to find permanent employment.

The parties agreed on the distribution of the marital assets, with the exception of Charles's retirement fund with the federal government and the parties' home in Helena. The present value of Charles's retirement fund was calculated by Alton Hendrickson, a consulting actuary designated by the District Court as an expert. This valuation was based on Charles's income and credits through 1992.

The parties' home in Helena was valued at approximately $130,000. The District Court ordered that the home be sold and that Priscilla receive 65 percent of the proceeds, and Charles receive 35 percent of the proceeds.

3

There was conflicting testimony regarding the value of Charles's retirement fund. Hendrickson valued Charles's retirement fund at between $154,144 and $263,530, depending on the age at which it is taken. However, Charles calculated the present value of his retirement fund at only $79,892, presuming a retirement age of 65 years. The District *Court* entered a qualified domestic relations order which awarded Priscilla 35 percent of Charles's IRS retirement benefit.

Charles was ordered to provide health insurance for Douglas and to pay 75 percent of any health insurance costs not covered by insurance. Charles was also ordered to pay Priscilla child support in the amount of $426 per month, and maintenance payments of $400 per month for two years, beginning in January 1994.

The District Court also determined that an inheritance Priscilla received from her mother was not part of the marital estate since the estate has not yet been closed and Priscilla did not receive anything from the estate until after the parties were separated.

### ISSUE 1

Did the District Court err in its calculation of the net worth of the marital estate?

A district court has broad discretion in determining the value of property in a dissolution. *In re Marriage of Milesnick* (1988), 235 Mont. 88, 94, 765 P.2d 751, 755. "Its valuation can be premised on expert testimony, lay testimony, documentary evidence, or any

4

combination thereof." *Milesnick, 765* P.2d at 755. "The court is free to adopt any reasonable valuation of marital property which is supported by the record." *In re Marriage of Rada* (1994), 263 Mont. 402, 405, 869 P.2d 254, 255-56 (citing *In re Marriage of Luisi* (1988), 232 Mont. 243, 756 P.2d 456). "As long as the valuation [of property in a dissolution] is reasonable in light of the evidence submitted, we will not disturb the finding on appeal." *Milesnick,* 765 P.2d at 755 (quoting *Luisi* 756 P.2d at 459).

Before it divides the marital estate, we have held that the district court must first determine the net worth of the marital assets. *In re Marriage of Stephenson* (1989), 237 Mont. 157, 160, 772 P.2d 846, 848. "The test [when we review a property division] is whether the findings as a whole are sufficient to determine the net worth and to decide whether the distribution was equitable." *Stephenson,* 772 P.2d at 848 (citing *Nunnally v. Nunnally* (1981), 192 Mont. 24, 27, 625 P.2d 1159, 1161). In this case, the principal assets of the marital estate were the family home and Charles's retirement fund. However, the court's findings indicate that it also considered the values assigned by the parties to their other assets, which were divided by agreement. The court then valued the two principal assets, based on the testimony of the real estate agent who appraised the home, and the actuary who evaluated the retirement benefits.

We have held that the valuation of marital assets must only be reasonable in light of the evidence submitted. *In re Marriage of Johns* (1989), 238 Mont. 256, 258, 776 P.2d 839, 840 (citing *Milesnick*, 765 P.2d at 755).

We conclude that the court did consider the value of the entire marital estate, and that the findings of fact regarding the evaluation of marital assets were supported by substantial credible evidence and were not clearly erroneous.

ISSUE 2

Did the District Court err in its distribution of the marital estate?

When we review a district court's division of marital property, we will uphold the district court unless the findings on which that division is based are clearly erroneous. *In re Marriage of Maedje* (1994), 263 Mont. 262, 265-66, 868 P.2d 580, 583 (citing *In re Marriage of McLean/Fleury* (1993), 257 Mont. 55, 849 P.2d 1012). If the district court's findings of fact are not supported by substantial evidence, they are clearly erroneous. *Interstate Production Credit Ass'n v. DeSaye* (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287. If the district court's findings of fact upon which it bases its division of marital property are supported by substantial credible evidence and are not clearly erroneous, "[t]his Court will not alter the trial court's decision unless there is an abuse of discretion."

*Maedje,* 868 P.2d at 583 (citing *In re Marriage of Scoffield* (1993), 258 Mont. *337, 852* P.2d 664).

Section 40-4-202, MCA, governs the division of property in a dissolution of marriage. That section provides, in pertinent part, that in a dissolution proceeding assets belonging to both parties shall be distributed equitably. Section 40-4-202, MCA, sets forth the factors to be considered in apportionment of marital assets. That section provides in part that:

> (1) . . . In making apportionment, the court shall consider the duration of the marriage . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties . . . . The court shall also consider the contribution or dissipation of the value of the respective estates and the contribution of a spouse as a homemaker or to the family unit. In dividing property acquired prior to the marriage; property acquired by gift, bequest, devise, or descent . . the court shall consider those contributions of the other spouse to the marriage, including:
> (a) the nonmonetary contribution of a homemaker;
> (b) the extent to which such contributions have facilitated the maintenance of this property .

In its apportionment of the marital assets, the District Court took these factors into account, including the parties' ages, health, occupations, employability, ability to earn income, and liabilities. In its apportionment of the value of the marital home, the District Court took into account the differences in the parties' income and their ability to obtain assets in the future. The District Court also took into account the fact that Priscilla, as primary caretaker of Douglas, would need a home in which to raise their child. The District Court considered that two-thirds

*7*

of Charles's retirement account was earned during the marriage, and on that basis, concluded that Priscilla is equitably entitled to 35 percent.

We conclude that the District Court's apportionment of the marital assets was supported by substantial evidence and that its findings are not clearly erroneous.

<u>ISSUE 3</u>

Did the District Court err when it awarded Priscilla a fixed percentage of Charles's retirement benefit?

The standard of review of a district court's division of marital property is as set forth in the previous section. We have defined substantial evidence as "'evidence that a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.'" *In re Marriage of Davies* (Mont. 1994), 880 P.2d 1368, 1372, 51 St. Rep. 929, 932 (quoting *Barrett v. Asarco, Inc.* (1990), 245 Mont. 196, 200, 799 P.2d 1078, 1080).

"It is well established in this state that retirement benefits are part of the marital estate . ." *Rolfe v. Rolfe* (1988), 234 Mont. 294, 296, 766 P.2d 223, 225 (citing *Karr v. Karr* (1981), 192 Mont. 388, 628 P.2d 267). Therefore, the retirement plan in this case is properly part of the marital estate. The question is how to equitably divide the pension plan. We have held that "[g]enerally, the proper test for determining the value of a

pension is the present value." *Rolfe*, 766 P.2d at 225 (citing *In re Marriage of Bowman* (1987), 226 Mont. 99, 108, 734 P.2d 197, 203).

In this case, the District Court utilized the services of an actuary to determine the present value of Charles's retirement plan with the IRS.

Under the "time rule," retirement benefits are usually divided upon their receipt. A spouse, therefore, is entitled to increases or accruals on his or her interest in the retirement plan because of the delay in receiving that interest. *Rolfe*, 766 P.2d at 226 (citing McNamara *Dividing Pension Benefits Upon Divorce*, ALI-ABA Course Materials Journal, No. 2, 33, 42 (1983)).

In this case, the District court held that Charles's retirement benefit with the IRS was part of the marital estate because two-thirds of this retirement benefit was earned during the parties' marriage. Testimony by an actuary determined the present value of Charles's retirement benefit. Hendrickson testified that the present value of Charles's retirement benefit is $263,530. Hendrickson assumed that Charles would retire at age 55 after 30 years of service with the IRS. According to Hendrickson, if Charles retired at age 62, the present value of his retirement benefit would be $154,144, including cost of living adjustments. Without cost of living adjustments, the present value of Charles's retirement fund at age 62 would be $119,969.

The District Court used this testimony to determine the value of Charles's retirement. Applying the time rule to Charles's

retirement benefit, the District Court determined that 20 of the 30 years of service required for federal retirement was earned during the parties' marriage. On this basis, and taking into consideration Priscilla's earning capacity and the length of the parties' marriage, the District Court issued a qualified domestic relations order in which it awarded Priscilla 35 percent of Charles's retirement benefit.

Priscilla also bears the risk of unforeseen contingencies which may affect Charles's benefits. Testimony by the actuary established that the value of the retirement benefit is greatest when it is taken at age 55, and the value declines if it is taken after age 55. If Charles delays his retirement until after age 55, Priscilla will receive less. If Charles should die prematurely and not achieve 30 years of service with the IRS, she will also receive less.

Substantial credible evidence supports the District Court's findings regarding its apportionment of Charles's retirement benefits, and we conclude that they are not clearly erroneous.

The judgment of the District Court is affirmed.

_____
                    Justice

We concur:

_____
  Chief Justice

John Conway Harrison

Justices

December 6, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


John L. Hollow
Attorney at Law
318 E. Sixth Ave.
Helena, MT 59601


Smoyer Law Fii
1085 Helena Ave.
Helena, MT 59601

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy