No. 05-495

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 84

IN RE THE MARRIAGE OF

JANICE A. DIRNBERGER,

Petitioner, Respondent and
Cross-Appellant,

and

JEROME A. DIRNBERGER,

Respondent and Appellant.

APPEAL FROM:    The District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DR 2004-158,
Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Paul Neal Cooley, Skelton & Cooley, Missoula, Montana

For Respondent:

Jamie J. McKittrick, Wells & McKittrick, Missoula, Montana

Submitted on Briefs:  September 13, 2006

Decided:  March 27, 2007

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    Janice A. Dirnberger (Janice) filed a petition requesting the dissolution of her marriage to Jerome A. Dirnberger, (Jerry) in the Fourth Judicial District Court, Missoula County. The matter was initially heard by Special Master Susan Leaphart before being moved to Judge Langton's court on October 4, 2004. Jerry timely appeals from the District Court's final dissolution. Janice cross-appeals. We affirm in part and reverse in part.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

¶2    Janice and Jerry met in the mid-1980's in Missoula, Montana. They married on January 2, 1993. The marriage was Janice's second and Jerry's third. No children were born of the marriage.

¶3    Jerry owned and managed several businesses prior to and during the marriage including Montana Glass, Inc., a business that fabricates and installs windows (hereinafter "Montana Glass"), and 1029 West Pine Partnership, Inc. (1029), an entity which owns the real estate occupied by Montana Glass. Jerry also owns and operates Montana Glass of Hamilton, a subsidiary of Montana Glass, from his home on a seasonal basis.

¶4    Jerry also owned an unimproved home site that he sold or exchanged during the marriage for a property at 2700 Thames Street in Missoula, which he titled in both his and Janice's name. After buying the Thames Street property, Montana Glass defaulted on a note to Best Built Windows that Jerry had personally guaranteed and Best Built proceeded to execute against Jerry. Fearful of the execution of judgment, Jerry deeded

2

the Thames Street property to Janice on August 30, 2001, and transferred the bulk of his 1029 stock to her. At Jerry's request, Janice subsequently deeded the property to Best Built to resolve the debt. The 1029 stock transfer from Jerry to Janice was then cancelled after resolution of the Best Built case. Apparently, Janice was either confused about or unaware of the stock transfers until dissolution proceedings began. In any event, to the extent she incurred legal fees during the Best Built case, Jerry later compensated her.

¶5 During the marriage, Janice trained as a Dale Carnegie instructor and obtained a second bachelor's degree in elementary education in 1994. Janice worked for Super Eight Motels in Missoula as a manager from 1997 until 2001. Janice and Jerry maintained entirely separate bank accounts during the marriage.

¶6 Jerry acquired the couple's residence in Missoula, Montana prior to the marriage. Jerry made the house payments and paid other living expenses from his account. The home was worth $83,000.00 in 1993 and had a mortgage debt of $11,632.00. Both parties performed personal labor and expended funds to maintain the house and yard. Janice paid a contractor to repaint the entire interior of the home and the parties also opened up an enclosed stairway, re-sided the garage, put new windows in the basement, and landscaped the yard. Jerry refinanced the residence in 1996 for $139,500.00 and directed $100,000.00 of the proceeds to Montana Glass. The parties both agree that the fair market value of the house was $190,000.00 at the time of dissolution.

¶7 Janice filed a petition for dissolution of marriage on February 26, 2004. Janice was 56 years old and Jerry was 60 years old. Jerry and Janice both have adult children from previous marriages. At the time of trial, Janice worked for Mountain West Bank of

3

Missoula as a customer service representative and earned about $22,000.00 per year and received health insurance benefits. Jerry derives income from the rent generated by the 1029 property and Montana Glass of Hamilton. Janice and Jerry each have their own separate retirement accounts.

¶8 During the dissolution proceedings, Janice requested a temporary order of protection on March 12, 2004, after an alleged physical altercation with Jerry. The parties eventually agreed to a mutual stipulation on March 30, 2004, regarding access to the residence and no contact between the parties. Jerry agreed to pay Janice $7,500.00 by April 7, 2004, and an additional $300.00 per month beginning in April and continuing throughout the dissolution proceedings. In exchange, Janice agreed to move out of the residence by April 7, 2004. The stipulation provided: "A determination as to whether this amount is maintenance or property settlement shall be determined at a settlement conference or final hearing in this matter."

¶9 Jerry returned to the residence as agreed and immediately filed a motion for relief alleging Janice wrongfully took some of his personal furnishings when she moved out. Jerry also deposited the check for $7,500.00 with the court instead of giving it to Janice. Special Master Susan P. Leaphart ordered a release of the funds on May 6, 2004, and provided that the issue of attorney fees and costs related to Janice's motion for disbursement of funds would be addressed at the final hearing.

¶10 Jerry later stopped paying the agreed $300.00 per month upon Janice's motion to continue the trial. Janice requested a continuance because the parties disagreed over discovery requests and Jerry moved to substitute judges. Jerry contended he should be

4

relieved of making the monthly payment because Janice delayed the hearing. Janice filed a motion for warrant of contempt but could not serve Jerry because he was in Bogota, Columbia at the time. Jerry's attorney tendered a check for $1,500.00 from the firm's trust account to Janice's attorney. Janice would accept payment, however, only on the condition that Jerry pay the associated attorney fees. Jerry declined, and placed the check in the court's possession.

¶11 The parties failed to reach a property settlement agreement. The District Court heard the case and entered its decree of dissolution on April 26, 2005. The District Court directed Janice to quitclaim her interest in the marital residence in exchange for a $22,404.00 cash payment from Jerry. In determining the payment, the District Court subtracted the value of the marital house in 1993 from the appreciated value at the time of trial ($190,000.00 - $83,000.00) and found the house had appreciated $107,000.00. The District Court relied on Janice's expert, Susan Liane (Liane), for calculating the amount attributable to market appreciation. Liane testified that the Missoula market appreciated between 6 and 8 percent per year for the previous four years and around 5 percent per year for the first 8 years of the marriage. The District Court used a 7 percent rate for the previous four years (28 percent) and 5 percent for the preceding 8 years (40 percent), resulting in a 68 percent total appreciation. The District Court determined that $50,560.00 of the home's value was attributable to appreciation (1.68 x $83,000.00 = $139,440.00. $190,000.00 - $139,440.00 = $50,560.00). The District Court then calculated the value of the home for distribution as follows:

$190,000.00 current value
- $ 83,000.00 original value
=$107,000.00
- $ 11,632.00 original mortgage debt
=$ 95,368.00
- $ 50,560.00 1993-2004 market appreciation
=$ 44,808.00 marital estate

¶12 The District Court concluded that both parties maintained and improved the home and therefore, divided the marital estate equally. The District Court also determined that Janice's ability to support herself through appropriate employment and her share of the marital estate justified denying her maintenance beyond the $7,500.00 check in the Clerk of Court's possession. The District Court later issued a *nunc pro tunc* order correcting this amount to $1,500.00.

¶13 The District Court determined that Janice never had any material involvement in Jerry's businesses or contributed to their value or maintenance in any way. In addition, the District Court dismissed the pending contempt of court motion filed by Janice and ordered that Janice and Jerry be responsible for their own attorney fees and costs.

¶14 Jerry appeals and Janice cross-appeals, and the parties present the following issues:

¶15 1. Did the District Court properly value the marital residence?

¶16 2. Did the District Court properly address money that Jerry paid to Janice pending the final dissolution?

¶17 3. Did the District Court abuse its discretion by denying Janice's request for maintenance?

¶18    4.    Did the District Court properly account for Janice's contributions to maintaining and preserving Jerry's premarital assets?

## STANDARD OF REVIEW

¶19    We review a district court's division of marital property to determine whether the findings upon which the district court relied are clearly erroneous. *In re Marriage of Clark*, 2003 MT 168, ¶ 7, 316 Mont. 327, ¶ 7, 71 P.3d 1228, ¶ 7 (citation omitted). Findings are clearly erroneous if they are not supported by substantial evidence, the court misapprehends the effect of the evidence, or this Court's review of the record convinces us that a mistake has been made. *In re Marriage of Schmieding*, 2003 MT 246, ¶ 14, 317 Mont. 320, ¶ 14, 77 P.3d 216, ¶ 14.

¶20    If the findings are not clearly erroneous, we will affirm the district court's distribution of property absent an abuse of discretion. *Clark*, ¶ 7. The test for abuse of discretion in a dissolution proceeding is whether the district court "acted arbitrarily without employment of conscientious judgment," or whether the district court "exceeded the bounds of reason resulting in substantial injustice." *Clark*, ¶ 7 (quoting *In re Marriage of Davis*, 1999 MT 218, ¶ 20, 295 Mont. 546, ¶ 20, 986 P.2d 408, ¶ 20).

¶21    In reviewing an award or denial of maintenance, this Court's role is limited to a determination of whether the district court's findings are clearly erroneous. *In re Marriage of Hanni*, 2000 MT 59, ¶ 33, 299 Mont. 20, ¶ 33, 997 P.2d 760, ¶ 33.

## DISCUSSION

### ISSUE I

¶22    *Did the District Court properly value the marital residence?*

7

¶23     Jerry argues that the District Court improperly relied on the expert testimony of Janice's expert, Liane, in determining the market appreciation rates for the marital residence.  A district court possesses broad discretion under § 40-4-202, MCA, to distribute the marital estate.  The district court also has far-reaching discretionary powers when valuing property for distribution.  *In re Marriage of Johns*, 238 Mont. 256, 258, 776 P.2d 839, 840 (1989).  The valuation need only be reasonable in light of the evidence submitted.  *Johns*, 238 Mont. at 258, 776 P.2d at 840.

¶24     In *Johns*, the husband's expert appraised the marital home at $40,000.00 and the wife's expert valued it at $56,000.00.  The district court adopted the appraisal value of the husband's expert.  This Court affirmed the district court and stated that when a district court is presented with conflicting evidence, the court must use its fact-finding powers to determine which evidence is more credible.  Unless there is a clear preponderance of the evidence against the district court's valuation, its findings, where based on substantial though conflicting evidence, will not be disturbed on appeal.  *Johns*, 238 Mont. at 259, 776 P.2d at 840-841 (citing *In re Marriage of Milesnick*, 235 Mont. 88, 94-95, 765 P.2d 751, 755 (1988)).  Finally, a district court may average the values given by experts to arrive at an equitable solution.  *In re Marriage of Garst*, 206 Mont. 89, 94, 669 P.2d 1063, 1066 (1983) (citing *Goodmundson v. Goodmundson*, 201 Mont. 535, 655 P.2d 509 (1982) *overruled on other grounds*).

¶25     The District Court did not abuse its discretion by averaging the percentage rates to determine the proportion of the home's value that could be attributed to market appreciation.  Janice's expert, Liane, testified that the market appreciation rate was

between 6 and 8 percent during the preceding four years. Mark Twite (Twite), Jerry's expert, also testified that the market rate fluctuated between 6 and 8 percent. In light of the expert testimony presented by both parties, the District Court did not abuse its discretion in averaging the rate to 7 percent to arrive at an equitable solution. *Garst*, 206 Mont. at 94, 669 P.2d at 1066.

¶26    Jerry also argues that the District Court should have compounded the market appreciation interest rate. However, neither Liane nor Twite testified that the market inflation rate should be compounded. Jerry also fails to point to any other testimony presented to the District Court regarding compounding of the market appreciation interest rate. Thus, the District Court also did not abuse its discretion by not compounding the market inflation rate in determining the value of the home. We therefore affirm on this issue.

**ISSUE II**

¶27    *Did the District Court property address money that Jerry paid to Janice pending the final dissolution?*

¶28    Jerry argues that the District Court failed to address and credit him for the money he paid Janice pending the final disposition. Jerry argues he paid Janice $7,500.00 in a lump sum, and an additional $300.00 per month as required by the stipulation agreement. The stipulation also provided that the District Court would make a final determination as to whether the amount was maintenance or property settlement. Jerry subsequently gave a $1,500.00 check to the District Court to distribute for the August 2004 through January 2005 payments. The District Court then ordered the Clerk to release the check, but made

9

a clerical error by stating the check was for $7,500.00. The District Court later corrected this clerical error and ordered the $1,500.00 check released to Janice.

¶29 The District Court, however, failed to address the $7,500.00 Jerry initially paid pursuant to the stipulation agreement. The failure of the District Court to consider the effect of the $7,500.00 payment on the final distribution of property resulted from a mistake, and we remand to the District Court to consider the amount paid by Jerry according to the terms of the stipulation agreement.

¶30 Janice argues on cross-appeal that the District Court failed to consider whether Jerry was in contempt of court by failing to make the $300.00 per month payments. In reviewing a district court's decision declining to find a party in contempt, we have stated that a district court has the responsibility to enforce its own orders and that contempt is a discretionary tool of the court to enforce compliance with its decisions. *In re Marriage of Baer*, 1998 MT 29, ¶ 45, 287 Mont. 322, ¶ 45, 954 P.2d 1125, ¶ 45. Where a district court has found there is no need to enforce compliance with its order or that the actions of a party do not present a challenge to its dignity and authority, we will not reverse its decision absent a blatant abuse of discretion. *Baer*, ¶ 45.

¶31 The District Court did not provide a basis for its decision to dismiss the pending contempt motion against Jerry. However, in reviewing the record, we find nothing that would lead us to believe that the District Court committed a blatant abuse of discretion in denying Janice's motion. Janice received the money that was at issue in her contempt motion. Accordingly, we conclude that the District Court did not err when it denied Janice's motion for contempt.

10

¶32 Janice also argues that the District Court failed to issue findings on whether Janice was entitled to attorney fees and costs incurred in filing her motion for contempt. In that we have concluded that the District Court did not err in denying Janice's motion for contempt, we need not reach this argument.

## ISSUE III

¶33 *Did the District Court abuse its discretion by denying Janice's request for maintenance?*

¶34 Janice argues that the District Court should have awarded her maintenance on the grounds that Jerry earns more than she does and she assisted him in his various businesses. A district court may award maintenance to either spouse "only if it finds that the spouse seeking maintenance: (a) lacks sufficient property to provide for his reasonable needs; and (b) is unable to support himself through appropriate employment." Section 40-4-203(1), MCA. The fact that one party may earn more than the other, absent more, does not require a maintenance award. *In re Marriage of Smith*, 2003 MT 63, ¶ 15, 314 Mont. 421, ¶ 15, 67 P.3d 199, ¶ 15.

¶35 The record reflects that Janice will have sufficient property to provide for her reasonable needs and will be able to support herself through employment. The District Court awarded Janice a cash payment from the equity in the marital home in the amount of $22,404.00 in the final property distribution. The District Court further determined that Janice had retirement funds and a vehicle, and that Jerry had made payments to her over the course of the proceedings.

11

¶36 The District Court also found that Janice could support herself through appropriate employment. Janice holds two college degrees and Dale Carnegie training. The District Court further found that her current employment provided benefits and she would soon be eligible for a raise. Finally, the District Court determined that Janice had no minor children to support. Based on the substantial evidence presented, we cannot conclude that the District Court's denial of maintenance was clearly erroneous.

## ISSUE IV

¶37 ***Did the District Court properly account for Janice's contributions to maintaining and preserving Jerry's premarital assets?***

¶38 Janice argues that the District Court abused its discretion by excluding Jerry's business assets from the marital estate. Section 40-4-202, MCA, requires that in dividing property acquired prior to marriage, the court shall consider a homemaker's non-monetary contributions and the extent to which such contributions facilitated the maintenance of the property. The District Court found that Janice never had any material involvement in Jerry's businesses and did not contribute to their value or maintenance in any significant way.

¶39 We have previously stated that a district court cannot distribute to the non-acquiring spouse property acquired before the marriage where there is no evidence that the spouse made any contribution to the assets in any form. *In re Marriage of Banka*, 2003 MT 84, ¶ 34, 315 Mont. 97, ¶ 34, 67 P.3d 885, ¶ 34. In *Banka*, the wife worked full-time outside the home, kept her own bank account, and did not help with her husband's farm operation either physically or financially. *Banka*, ¶¶ 32-33. We

12

determined that the district court's findings that the wife failed to help maintain or facilitate the farm business were not clearly erroneous. *Banka*, ¶ 34.

¶40 In this case, the District Court made extensive findings regarding the parties' financial status and relationships. The District Court noted that Jerry supported Janice in obtaining a second college degree and that she worked as a manager at Super Eight Motels. Janice did not work at Jerry's business other than occasionally filling in for janitorial staff, and her work as a bookkeeper for the business occurred before the parties married. Although Janice did hold the 1029 stock for a year before it reverted to Jerry, she neither benefited nor suffered from holding the stock, and Jerry compensated Janice for her legal fees by giving her a company minivan. She still possesses the van and concedes its value exceeded her out-of-pocket expenses.

¶41 We conclude that the District Court's findings were not clearly erroneous and the District Court did not abuse its discretion in concluding that Jerry's business assets were non-marital property.

## CONCLUSION

¶42 Based upon the foregoing, we reverse and remand to the District Court for a determination of the allocation of the $7,500.00 for which the District Court failed to account for in distributing the marital estate, as more particularly described in ¶¶ 28-29. To the extent the court deems it necessary to reallocate the marital estate as a result, it is within the court's discretion to do so. In all other respects, we affirm.

/S/ PATRICIA COTTER

13

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ JIM RICE
/S/ JAMES C. NELSON