DA 09-0221

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 394N

IN THE MATTER OF

C.P.,

A Youth in Need of Care.

APPEAL FROM:     District Court of the Fourth Judicial District,
                 In and For the County of Missoula, Cause No. DN 2006-076
                 Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

            For Appellant:

                Joslyn M. Hunt, Chief Appellate Defender, Kelli S. Sather, Assistant
                Appellate Defender, Helena, Montana

            For Appellee:

                Hon. Steve Bullock, Montana Attorney General, Micheal S. Wellenstein,
                Assistant Attorney General, Helena, Montana

                Lucy Darty, Assistant Attorney General, Missoula, Montana

                            Submitted on Briefs:  October 28, 2009

                                      Decided:  November 17, 2009

Filed:

            _____
                            Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2006, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 B.C. (Mother) appeals the termination of her parental rights. We affirm.

## ISSUE

¶3 A restatement of the issue on appeal is whether the District Court abused its discretion when it terminated Mother's parental rights to C.P.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 B.C. is the biological mother of C.P., who was born in 1998. The Department of Public Health and Human Services, Child and Family Services Division (DPHHS or Department) has been receiving reports involving this family since as early as 1999. In these reports, claims were made that the children[1] were left alone, were not fed, clothed, or cleaned adequately, were disciplined inappropriately, were physically and verbally abused, and were present when their mother used drugs. Some of the allegations of physical abuse were leveled against Father, after he and Mother were divorced.

---

[1] B.C. and P.P. (biological father) have four children: J.P., born 1989, S.P., born 1990, E.P., born 1993, and C.P., born 1998. B.C. and P.P. were divorced in 2000.

2

¶5     A substantiated report of physical abuse led DPHHS to remove C.P., E.P, and J.P. from Father's home in 2004.[2]  At that time C.P., E.P, and J.P. were removed from their father's home in 2004, they were not placed with their mother "due to chronic homelessness and her inability to care for the children."  The Department had Temporary Legal Custody (TLC) over these three children from April 2004 to March 2006.  During this time, both parents participated in treatment plans.  The children were reunited with Mother in September 2005 and the case was dismissed in March 2006.

¶6     In December 2006, the Department petitioned for Emergency Protective Services (EPS) and Temporary Investigative Authority (TIA) over Mother, E.P., and C.P.  E.P. and C.P. were removed from their mother's care and placed in foster care.  In February 2007, Mother, while disagreeing with allegations in the petition for TIA, nonetheless consented to the Department's TIA.  In May 2007, DPHHS filed a petition requesting adjudication of C.P. as a youth in need of care (YINC) and TLC of him for six months.  In July, Mother stipulated to the adjudication.

¶7     In December 2007, the Standing Master approved the DPHHS-proposed treatment plan for Mother.  In January 2008, E.P. was placed with his mother again.  Subsequent to E.P. returning to Mother's home, J.P. and S.P. began living with non-family members, telling DPHHS that their mother could not provide for their needs.  In April 2008, TLC of C.P. was extended for six months, at the end of which, the Department petitioned for termination of Mother's parental rights to C.P.  Hearings were held before the District

---

[2] S.P. remained with his father until February 2006 when a substantiated report of physical abuse led DPHHS to place him in foster care until July 2006 when he was placed in his mother's care.

Court on December 8 and 10, 2008. The District Court filed findings of fact, conclusions of law and an order (Order) terminating Mother's parental rights on March 19, 2009, and a notice of entry of judgment on March 23, 2009. Mother filed a timely appeal.

## STANDARD OF REVIEW

¶8 A court may order the termination of parental rights upon a finding supported by clear and convincing evidence that the child is a youth in need of care. Section 41-3-609(1), MCA. The court must find that the parent's conduct is unlikely to change in a reasonable time, considering a list of factors, the primary one of which is the "physical, mental, and emotional conditions and needs of the child." Section 41-3-609(3), MCA; *In re C.M.C.*, 2009 MT 153, ¶ 18, 350 Mont. 391, 208 P.3d 809 (citation omitted).

¶9 This Court reviews a district court's order on termination of parental rights for an abuse of discretion. A court acts arbitrarily when it acts without employment of conscientious judgment or in excess of the bounds of reason resulting in substantial injustice. Findings of fact are reviewed under the clearly erroneous standard, and conclusions of law are reviewed to determine whether they are correct. *C.M.C.*, ¶ 19 (citation omitted).

## DISCUSSION

¶10 Mother argues that the District Court incorrectly concluded that DPHHS made reasonable efforts to reunify her with C.P. because the Department failed to provide reasonable visitation, it caused her relationship with C.P. to further deteriorate, and its efforts to get her to abstain from marijuana use were unreasonable. As a result, she argues, the Department failed to present clear and convincing evidence that she was unfit

4

to parent C.P. and that termination of her parental rights was in C.P.'s best interests. Therefore, the District Court's termination of her rights was an abuse of discretion.

¶11 The State counters that the Department made reasonable efforts to reunify Mother and C.P., and that it created a comprehensive and reasonable treatment plan and provided Mother with adequate resources to successfully complete the plan. Mother, nonetheless, failed to comply with her treatment plan. The Department identifies the following treatment plan failures: Mother quit recommended counseling and treatment and she continued to use marijuana and drink alcohol, both of which continued to render her unfit to parent C.P., and illustrated that it was unlikely she would change within a reasonable time.

¶12 In its March 2009 Order, the District Court set forth numerous factual findings, including, but not limited to: (1) C.P. was an adjudicated YINC who had been in out-of-home care for at least 24 months; (2) an appropriate treatment plan had been provided to Mother and she did not file an objection to any provisions therein; (3) Mother failed to meet numerous tasks set forth in her treatment plan pertaining to appropriate and required counseling and alcohol and drug treatment; and (4) Mother failed to maintain employment or a legal means of income that would provide her with financial stability for her children. The court also outlined the multiple steps DPHHS took to avoid seeking termination of her parental rights. However, because Mother was unable or unwilling to perform the tasks in her treatment plan, none of those steps was successful. The court, therefore, concluded it was in C.P.'s best interests to terminate Mother's parental rights.

The District Court ordered that permanent legal custody, subject to Father's parental rights, be awarded to DPHHS with the right to consent to adoption.

¶13 The record supports the District Court's findings; therefore, its findings are not clearly erroneous. In light of the conflicting evidence presented, it was incumbent upon the District Court to determine which evidence was more credible. *See In re Marriage of Dirnberger*, 2007 MT 84, ¶ 24, 337 Mont. 56, 154 P.3d 1227. As we further stated in *Dirnberger*, "[u]nless there is a clear preponderance of the evidence against the district court's valuation, its findings, where based on substantial though conflicting evidence, will not be disturbed on appeal." *Dirnberger,* ¶ 24 (citations omitted).

¶14 Moreover, the court correctly applied § 41-3-604, MCA (allowing a presumption that termination is in the best interests of a child if the child has been in foster care for 15 of the most recent 22 months), and § 41-3-609(2), MCA (setting forth the factors district courts should consider in determining whether a parent's conduct or condition is likely to change within a reasonable time, which includes consideration of a parent's excessive use of intoxicants). The court identified and discussed each task of Mother's treatment plan with which she failed to comply. While Mother argues that she successfully completed several tasks set forth in her treatment plan and that the court therefore should have found that she was in substantial compliance therewith, we have stated previously that "[s]ubstantial or partial compliance is insufficient to prove that a person is prepared to be a fit or responsible parent." *In re V.F.A.*, 2005 MT 76, ¶ 13, 326 Mont. 383, 109 P.3d 749 (citation omitted).

¶15   We have determined to decide this case pursuant to Section I, Paragraph 3(d)(i) of our 1996 Internal Operating Rules, as amended in 2006, which provides for memorandum opinions.  It is manifest on the face of the briefs and the record that the appeal is without merit because there is sufficient evidence to support the District Court's findings of fact, the issue is clearly controlled by settled Montana law which the court correctly interpreted, and there was no abuse of judicial discretion.  The record supports the District Court's conclusion to terminate Mother's parental rights.

¶16   We affirm.

/S/ PATRICIA O. COTTER

We concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ JIM RICE